425 So.2d 547 (1982)
Felicia M. TRONCONI, Appellant,
v.
Francis Joseph TRONCONI, Appellee.
No. 81-525.
District Court of Appeal of Florida, Fourth District.
December 1, 1982.
Rehearing Denied February 9, 1983.
*548 Ira Marcus, P.A., Fort Lauderdale, for appellant.
Philip Michael Cullen, III, Fort Lauderdale, for appellee.
Melvyn B. Frumkes and Cynthia L. Greene of Law Offices of Melvyn B. Frumkes, P.A., Miami, Stephen W. Sessums and Miriam E. Mason, of Law Offices of Stephen W. Sessums, P.A., Tampa, amicus curiae on behalf of The Family Law Section of The Florida Bar.
EN BANC.
The wife here appeals the trial court's equitable distribution of two parcels of Florida real estate located in Pompano Beach and Lake Placid, Florida and another in the Bahamas. All of these properties were held as tenants by the entirety and purchased during the marriage, largely with joint funds.[1] We affirm.
During this marriage, which produced no children and lasted for twenty-six years, both the husband and wife worked full time. At the time of the hearing, both were sixty years old. The wife was in fairly good health and still working, while the husband was in poor health with ulcers and a mental disorder, unable to work then or in the foreseeable future, with unemployment compensation constituting his only source of regular income.[2]
Within this factual framework, the trial judge found that "neither party had established a special equity in any of the real property," that "physical partition of the realty would not be in the best interests of either party" and that his announced disposition of the property would result in an "equitable division of the parties' assets."
Pursuant thereto, he awarded a portion of the real estate holdings to the one and the remainder to the other in what the record supports as an approximately equal division of the equities involved. No periodic or rehabilitative alimony was awarded. To all of this, the wife takes great exception.
In affirming the trial judge, we adopt the doctrine of equitable distribution and revisit Sangas v. Sangas, 407 So.2d 630 (Fla. 4th DCA 1981). In Sangas, we were dealing with what was essentially an inequitable and improper distribution favoring one spouse over the other in a manner not justified by the facts of the case. It is true that in Sangas we opined that Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980), did not create a totally new vehicle for the division of property; however, we now think, after further analysis of Canakaris and its progeny, that although the Supreme Court continues to quote traditional concepts in the vernacular of lump sum, periodic and rehabilitative alimony, we believe it has adopted the doctrine of equitable distribution de facto if not de jure. The Canakaris decision uses the word "equity" in its various forms thirteen times. "Justice," "justified" or "justification" appears twelve *549 times and the phrase "equitable distribution" twice. In our view the totality of the language there employed, coupled with the accompanying dissertation on the trial judge's "broad discretion" obviously permits a trial judge to make a distribution of assets acquired during the marriage in a manner which is just and equitable: ergo, make an equitable distribution.
There is an important new twist which emerges from Canakaris. One of the two basic criteria traditionally employed to support lump sum awards has been deep sixed and is never once referred to in the opinion in the context of lump sum. "Ability" to pay remains but "need" has been excised and instead the word "justification" substituted. For emphasis, we quote from the opinion:
A judge may award lump sum alimony to ensure an equitable distribution of property acquired during the marriage, provided the evidence reflects (1) a justification for such lump sum payment and (2) financial ability... . At 1201.
It is this substitution that appears to make the whole equitable distribution doctrine viable. We could never before have said that the wife "needs" Blackacre and the husband "needs" Whiteacre, each of equal value. Nevertheless, we can "justify" such a distribution and we readily do so regarding the real estate sub judice. In sum, when speaking of the former traditional requirements, we were required to find need plus ability to respond, whereas under Canakaris we no longer have to find need to support lump sum awards. Instead, the necessary coupling is justification and ability to respond.
Subsequent cases appear to confirm our conclusion. In Claughton v. Claughton, 393 So.2d 1061 (Fla. 1980), the court spoke of providing "an equitable share of the assets of the parties accumulated during their marriage, as distinguished from her need for support ... if it is found necessary to compensate the wife for her contribution to the marriage" (emphasis supplied). Subsequently in Robinson v. Robinson, 403 So.2d 1306 (Fla. 1980), the court held that, "awarding lump sum alimony to ensure equitable distribution of property acquired during the marriage is within the trial court's discretion so long as there is some justification for the award and the paying spouse is financially able to make the payment" (emphasis supplied). Even more recently in Hill v. Hill, 415 So.2d 20 (Fla. 1982), the Supreme Court again spoke approvingly of the "fair division of property acquired during the marriage."
We stress that this opinion applies only to assets acquired during the marriage and we specifically do not address its applicability to assets acquired by inheritance or gift or whether it might encompass the value of a personal professional degree. Nor do we suggest that an equitable distribution must be carried out automatically in every case. Other more traditional methods are still available in the sound discretion of the trial judge. Further as Canakaris notes, an "equitable" distribution does not require an "equal" distribution. The two words are not synonymous. When an equitable distribution is invoked it may well take the place of lump sum alimony or any special equity. However, any such equitable distribution may be influenced by factors indicating the presence of a special equity or any concomitant award of periodic alimony.
He or she who seeks an equitable distribution should set it forth in the pleadings. However, in the interests of justice, we make this suggestion prospective only. Moreover it should be remembered that equitable distribution can involve an award of the wife's property to the husband as well as vice versa. See Roffe v. Roffe, 404 So.2d 1095 (Fla. 3d DCA 1981); Ingram v. Ingram, 379 So.2d 955 (Fla. 1980).
As to the standards to be used to effectuate equitable distribution, the court in Canakaris contented itself with quoting the last paragraph of Section 61.08, Florida Statutes (1979) which says:
The court may consider any other factor necessary to do equity and justice between the parties.
*550 However we see no reason why the provisions of subsection (2)(a) through (f) of the same section should not also be applicable to an equitable distribution and we have considered them relative to our conclusion in this case. It is tempting to enumerate a more complete laundry list of guidelines. Perhaps however this is better left to the legislature or our Supreme Court. Meanwhile, we note the proposed legislation being pushed by the Family Law Section of the Florida Bar which sets forth guidelines which do not appear to be inappropriate.[3]
AFFIRMED.
LETTS, C.J., and DOWNEY, HERSEY, DELL and WALDEN, JJ., concur.
BERANEK, J., with whom HURLEY, J., joins, concurs specially with opinion.
GLICKSTEIN, J., with whom HURLEY, J., joins, concurs specially with opinion.
ANSTEAD, J., concurs specially with opinion.
BERANEK, Judge, with whom HURLEY, Judge, joins, concurring in the judgment only:
I concur in the result reached by the majority but on different grounds. Under the majority view of Canakaris, the award here can be sustained as a "justified" award of lump sum alimony. In Sangas v. Sangas, supra, we held that equitable distribution was not a totally new vehicle for the division of property. The majority now seems to recede from that holding. If we are not receding, there is obviously no reason to consider this case en banc. See Rule of Appellate Procedure 9.331. We are apparently now holding equitable distribution to be a totally new vehicle, but I am not at all certain how it differs from the "more traditional" concepts of alimony and special equities. Strangely, the guidelines suggested by the majority opinion are a simple reference to Section 61.08, Florida Statutes (1979), which is the statute governing awards of alimony. If the guidelines are the same, what is the difference? We now know that lump sum alimony has been redefined by abrogating "need" and substituting "justification." I am unable to distinguish between equitable distribution and the newly defined "justified lump sum alimony." I submit that equitable distribution is simply a goal or an end  which is to be achieved through the avenues of alimony and special equities. Canakaris only broadened the definitions of these avenues and also broadened the discretion of the trial judge in achieving the laudable goal of an equitable division or distribution.
I disagree with the majority view that a trial judge has discretion to employ the "more traditional" concepts (alimony and special equity) to the exclusion of equitable distribution or to use equitable distribution and ignore alimony and special equities. The uncertainty created by this approach will be comfortable for the courts but further cloud an already murky situation for the litigants.
GLICKSTEIN, Judge, with whom HURLEY, Judge, joins, concurring specially:
Although I join in the result and agree with much of what is said in the majority opinion, I am troubled by the following language:

*551 In affirming the trial judge, we adopt the doctrine of equitable distribution and revisit Sangas v. Sangas, 407 So.2d 630 (Fla. 4th DCA 1981). In Sangas, we were dealing with what was essentially an inequitable and improper distribution favoring one spouse over the other in a manner not justified by the facts of the case. It is true that in Sangas we opined that Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980), did not create a totally new vehicle for the division of property; however, we now think, after further analysis of Canakaris and its progeny, that although the Supreme Court continues to quote traditional concepts in the vernacular of lump sum, periodic and rehabilitative alimony, we believe it has adopted the doctrine of equitable distribution de facto if not de jure.
By way of preface, I am not troubled by the concepts or the labeling. If "equitable distribution" is to be a device recognized in Florida jurisprudence and "equity and justice" are to remain the goals, then those concepts and labels, as well as the guidelines to which the majority refers elsewhere in the opinion, appear very attractive.
What concerns me, however, is the choice of language the supreme court uses in Canakaris (accent on the second "a") and this court's construction of the intent thereof. Throughout its opinion, the supreme court in Canakaris refers to Judge Rawls' analysis in Brown v. Brown, 300 So.2d 719 (Fla. 1st DCA 1974), cert. dismissed, 307 So.2d 186 (Fla. 1975). That opinion provides an in-depth study of alimony in Florida and concludes:
Lump sum alimony is no longer frowned upon in adjusting the material wealth of the parties at the time of dissolution of the marriage. The overriding tenor of this Court's decisions in both Beard, supra [Beard v. Beard, 262 So.2d 269 (Fla. 1st DCA 1972)], and Thigpen, supra [Thigpen v. Thigpen, 277 So.2d 583 (Fla. 1st DCA 1973)], is "a new day is born. Husband and wife are now truly partners in the marital venture sharing equal rights and obligations."
Id. at 725-26 (footnote omitted).
As the majority opinion observes, the term "equitable distribution" is recited twice in Canakaris. What it does not say, however, is that on both occasions the supreme court's discussion of the concept is tied to the device or vehicle of lump sum alimony which Judge Rawls had discussed earlier in Brown:
A judge may award lump sum alimony to ensure an equitable distribution of property acquired during the marriage, provided the evidence reflects (1) a justification for such lump sum payment and (2) financial ability of the other spouse to make such payment without substantially endangering his or her economic status. Brown v. Brown.

... .
... This lump sum alimony award was clearly within the trial court's discretion and was justified as part of an equitable distribution of the property of the parties acquired during their marriage.
382 So.2d at 1201-04.
Later, in Robinson v. Robinson, 403 So.2d 1306, 1306 (Fla. 1980), to which the majority also refers, the supreme court said in reference to Canakaris:
We held that awarding lump sum alimony to ensure equitable distribution of property acquired during the marriage is within the trial court's discretion so long as there is some justification for the award and the paying spouse is financially able to make the payment "without substantially endangering his or her economic status." Id. at 1201.
Even in Roffe v. Roffe, 404 So.2d 1095, 1096 (Fla. 3d DCA 1981), also cited by the majority, the Third District Court of Appeal said:
The wife claims error in the court's award as lump sum alimony of her interest in a formerly-rent-producing residence, which at the time of the final judgment was being occupied by Mr. Roffe and their two minor children, whose custody he was granted. In the *552 light of the fact that Mrs. Roffe was similarly granted the husband's interest in the marital home where she lived, the reciprocal lump sum awards represent an appropriate exercise of the trial court's power to fashion, by this device, an equitable distribution of the parties' property  in other words, to "make a property settlement agreement" for them  which we think has been granted by Canakaris v. Canakaris, supra, and Ingram v. Ingram, 379 So.2d 955, 956 (Fla. 1980); see Blum v. Blum [382 So.2d 52 (Fla. 3rd DCA 1980)], supra; Bird v. Bird, 385 So.2d 1090 (Fla. 4th DCA 1980); Lewis v. Lewis, 383 So.2d 1143 (Fla. 4th DCA 1980).
(Footnote omitted.)
The majority concludes that notwithstanding the court's use in Canakaris of the phrase "equitable distribution" solely in connection with lump sum alimony, the court intended to adopt de facto the concept of equitable distribution as a device to achieve equity and justice. I admire what the majority seeks to do in reaching such conclusion; but even if the majority is correct, it would be wiser and infinitely more meaningful to certify the following question to the supreme court as one of great public importance:
WAS THE TERM "EQUITABLE DISTRIBUTION" AS INITIALLY USED IN CANAKARIS V. CANAKARIS, 382 So.2d 1197 (Fla. 1980), INTENDED AS A VEHICLE OR DEVICE TO EFFECT EQUITY AND JUSTICE BETWEEN THE PARTIES OR AS THE CONCOMITANT GOAL TO BE ACHIEVED BY AWARDS OF LUMP SUM ALIMONY, RECIPROCAL AND OTHERWISE?
It seems unnecessary for this court to speculate when Justice Overton authored the opinions in Canakaris and Claughton v. Claughton, 393 So.2d 1061 (Fla. 1980), was part of the per curiam in Robinson, and remains available on the court, which is accessible by means of certifying the above question. How can or why should this court attempt to divine, without assistance from the supreme court, what was intended by the language used  particularly when the majority is taking such an important step while minimizing the constant express tie between equitable distribution and lump sum alimony? Perhaps the answer to the question will be just what the majority seeks, adding stature  and authority  to their boldness and vision.
ANSTEAD, Judge, specially concurring:
I find myself in agreement with almost everything that has been said by my colleagues in both the majority and the specially concurring opinions. To be certain all of these opinions agree on the result in the case at hand, i.e., that the remedy fashioned by the trial court should be affirmed regardless of whether the remedy is approved as a form of lump sum alimony or equitable distribution. For that reason it may appear to the parties that the views expressed by the various members of this court are much ado about nothing. We have hardly reinvented the wheel.
For the most part the legislature controls the relief available to the parties upon the dissolution of a marriage. However, it has been left up to the courts to interpret the legislative enactments and determine the specific nature of the relief available to marital litigants. With respect to the disposition of marital assets the legislature has provided for some time that alimony, including lump sum alimony, may be awarded to either spouse and that in determining a proper award a trial court may consider any factor necessary to do justice and equity between the parties. In carrying out this legislative mandate, however, the courts limited alimony awards, including requests for lump sum alimony, to those based on the needs of the requesting spouse and the ability to pay of the other spouse. In addition, lump sum awards have been restricted to those cases where unique circumstances indicated periodic alimony would not be suitable or adequate. As a result of this judicial gloss on the legislative provisions for lump sum alimony, property awards in dissolution cases have been closely tied to record title. With rare exception, and that *553 in most cases involving the marital domicile, the parties have come out of a dissolution with an interest only in that property in which they had a record title interest at the time of dissolution.
The inequity of that situation has been most apparent in the case once described as the typical American marriage where the parties started out with little or nothing and approached the marriage as a partnership or joint venture with the wife devoting her full time to her duties as a wife and mother and the husband providing the living. Although the parties rarely articulated their expectations as to how assets accumulated during such a marriage would be divided, implicit in most such marriages was an understanding that such assets would be shared in some equitable fashion. The inequity occurred thirty years later when the marriage was dissolved and the husband, in whose name the substantial investments of the parties had been accumulated, usually as a matter of convenience, walked away with all of those assets and the wife, if she was lucky, was awarded some periodic alimony.
The first appellate decision of note to face up to the inequity of this state of affairs was Brown v. Brown, 300 So.2d 719 (Fla. 1st DCA 1974), cert. dismissed, 307 So.2d 186 (Fla. 1975), wherein Judge Rawls announced that "a new day is born" and that lump sum alimony should be used as a means of redistributing the material wealth of the parties in accord with equitable principles. However, despite Brown, courts for the most part continued to limit the use of lump sum alimony and marital property continued being distributed in accord with record title. It was not until 1980, in the decision in Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980), that the "new day" actually arrived in Florida. Canakaris belatedly launched the "new day" by approving Brown, thereby freeing trial judges from the judicial restraints previously imposed on the use of lump sum alimony.
In Canakaris judges were granted broad authority to utilize lump sum alimony as a means to ensure an equitable distribution of marital property based on the nature of the marital relationship and the role played by each partner, regardless of the record title of the property in question. To be certain Canakaris represented a major break from the prior case law that had restricted trial judges in their use of lump sum alimony and now authorized such judges to in effect fashion property settlements between the parties based on equitable principles. "Justification," i.e., any reason predicated on valid equitable principles, was substituted for the prior "need" or "unique circumstances" previously required to justify a lump sum award. Ideally, there may be an explicit agreement between the marital partners as to their respective roles and their interests in the assets accumulated during the marriage. In most instances, however, trial judges will be required to fashion an equitable division of the marital assets based upon an examination of the actual role played by each partner and the contribution of each to the marital partnership. See Grimmett v. Grimmett, 425 So.2d 545 (Fla. 4th DCA Case No. 81-1833, opinion filed Dec. 1st, 1982) (published simultaneously with this opinion).
In the case at hand we find ourselves gripped in a battle of semantics as to whether to label the Supreme Court's adoption of this approach as an entirely new remedy of "equitable distribution" or as simply an approval of the use of the existing remedy of lump sum alimony free of the artificial and inequitable restraints previously placed on its use. I must agree that in reviewing Canakaris I find few of the trappings usually associated with the formal adoption of an entirely new doctrine as that doctrine may have been embraced legislatively or judicially in other jurisdictions. Rather, Canakaris simply seems to have endorsed the use of the existing remedy of lump sum alimony based on the standards previously articulated in Brown. This interpretation of Canakaris is also consistent with the view that the legislature has primary responsibility for determining the relief available upon dissolution. In this case it makes very little difference since this court appears to be of the unanimous *554 view that the trial court acted well within its discretion in distributing the marital assets of the parties. Obligated as we are to place substance over form we should, therefore, approve the award and move on to the next case.
NOTES
[1] There are other assets which were divided, but we find no error in this division. We treat only the real estate which constitutes the bulk of the parties' assets.
[2] There are other factual considerations, but the above set forth appear to be the most important and we deem them sufficient to support our conclusion.
[3] (2) In a proceeding for dissolution of marriage, the court shall order such division of marital property as is equitable. The court shall set aside to each spouse his separate property and shall divide the marital property in such proportions as the court deems just after considering all revelant [sic] factors including:

(a) The contribution to the marriage by each spouse, including contributions to the care and education of the children and services as homemaker.
(b) The economic circumstances of the parties.
(c) The duration of the marriage.
(d) Any interruption of personal careers or educational opportunities.
(e) The contribution to the personal career or educational opportunity of the other spouse.
(f) The contribution of each spouse to the acquisition, enhancement, or improvement of the marital property and the separate property of the other party.
(g) The existing liabilities of the parties in the acquisition and maintenance of marital property.
(h) The results of any alimony awarded.