**Bernadette CHARLES, Appellee,**

v.

**Albert Mansfield CHARLES, Appellant.**

No. 85–3192.

United States Court of Appeals,
Third Circuit.

Argued Dec. 4, 1985.

Decided April 22, 1986.

Garth, Circuit Judge, filed dissenting opinion.

Veronica J. Handy (argued), Edith L. Bornn, Law Offices of Edith L. Bornn, Charlotte Amalie, St. Thomas, U.S. Virgin Islands, for appellee.

John W. Newman (argued), Charlotte Amalie, St. Thomas, U.S. Virgin Islands, for appellant.

Before HUNTER, GARTH and BECK-ER, Circuit Judges

## OPINION OF THE COURT

BECKER, Circuit Judge.

This case presents the question whether the Territorial Court of the Virgin Islands erred in considering a spouse's responsibility for the failure of a marriage in the distribution of the marital homestead pursuant to V.I.Code Ann. tit. 33 § 2305(d) (1967 & Supp.1985). For the reasons that follow, we conclude that § 2305(d)'s broad grant of equitable discretion permits consideration of marital fault in the homestead distribution, and hence that the court's ruling was proper.

**I.**

On August 31, 1982, Bernadette Charles ("Bernadette") instituted divorce proceedings against her husband, Albert Charles ("Albert") in the Territorial Court of the Virgin Islands, Division of St. Thomas and St. John. In addition to seeking a divorce decree, Bernadette's complaint also requested disposition of all property acquired by the parties during the marriage, including the marital homestead[1] located at 37–29 Estate Pearl, St. Thomas, Virgin Islands, with equity valued at $93,000; real estate located at 22–10 Estate Mandahl, St. Thomas, with equity valued at $6,000; a Wellcraft Suncruiser boat, with equity valued at $4,000; a $13,000 certificate of deposit and a $675 savings account, both in Albert's name; a $4,198.20 savings account in Bernadette's name; and other personal property of the parties worth $5,000.

On July 7, 1983, Judge Feuerzeig of the Territorial Court filed Findings of Fact and Conclusions of Law granting the divorce and distributing the marital property. Judge Feuerzeig found that during their years of marriage, Albert repeatedly abused Bernadette verbally and physically, was continuously involved in extra-marital affairs, and failed to contribute to household expenses.[2] He also found that during the marriage, Bernadette earned two dollars for every one dollar earned by Albert. Judge Feuerzeig concluded that the "equities of the parties" necessitated a 66 ⅔% share to Bernadette, and a 33 ⅓% share to Albert. Accordingly, Judge Feuerzeig issued a second decree on September 1, 1983, awarding Bernadette the marital homestead at Estate Pearl and awarding Albert all of the remaining property.[3] Judge

---

**1.** "[A] homestead shall constitute the abode including land and buildings, owned by, and actually occupied by, a person, or by members of his family free of rental charges." V.I.Code Ann. tit. 33, § 2305(a) (1967 & Supp.1985).

**2.** Albert's abusive behavior continued throughout the marriage. On August 24, 1982, one week before Bernadette filed for divorce, for example, Albert chased her out of the marital homestead and threatened that if she returned "he had a gun and was prepared to use it."

Affidavit of Bernadette Charles 9–26–82, at 1. As a result of Albert's actions, Bernadette was forced to reside with her parents during the course of the divorce proceedings. *See* note 3 *infra*.

**3.** The September 1, 1983, decree provides, in pertinent part:

Upon delivery to [Bernadette] of a quitclaim deed to the Parcel No. 37–29, Estate Pearl, St. Thomas, Virgin Islands, [Bernadette] shall:

Feuerzeig directed Albert to vacate the marital homestead on August 31, 1983, and deliver the keys to Bernadette or her attorney, Edith Bornn.[4]

Albert appealed from the second decree. He noted that Judge Feuerzeig had said that, regardless of their relative economic contributions to the marriage, he would ordinarily have given Albert one-half of Estate Pearl because the house had been bought primarily with proceeds of the sale of property owned by Albert prior to the marriage. Judge Feuerzeig refused to apportion Estate Pearl in this way, however, because he found that the breakdown of the marriage was due solely to Albert's misconduct. In effect, to punish Albert's misconduct, Judge Feuerzeig awarded the entire marital homestead to Bernadette.[5] Albert contended that consideration of marital fault in the distribution of the homestead was proscribed both by the Virgin Islands divorce code and the marital homestead distribution statute, V.I.Code Ann. § 2305(d).

The District Court of the Virgin Islands affirmed Judge Feuerzeig's decision. Chief Judge Christian stated that, contrary to Albert's contention, neither the divorce code nor V.I.Code Ann. tit. 33 § 2305(d) proscribe consideration of marital fault in the distribution of the marital homestead in an appropriate case, and indeed that § 2305(d) explicitly permitted such consideration. The district court further held that Judge Feuerzeig had not abused his discretion in his evaluation of marital fault. The district court therefore affirmed Judge Feuerzeig's decree. This appeal followed.

## II.

▮ Two issues are raised on appeal. First, we must consider whether the direction in V.I.Code Ann. tit. 33 § 2305(d) to

---

a. Forthwith quitclaim to [Albert] all of her right, title and interest to the property of Parcel No. 22–10 Estate Mandahl, St. Thomas, Virgin Islands;

b. Shall transfer to [Albert] all of her right title, and interest in and to the Wellcraft Suncruiser boat;

c. Release any interest she may have in and execute a release of any interest she may have in and to the certificate of deposit at the Bank of Nova Scotia;

d. Pay to [Albert] the balance or a sum equal to the balance in the savings account of the parties at the Chase Manhattan Bank, which balance the court has determined to be $4,198.20 and shall relinquish any claim to the Chase Manhattan Bank Account.

Although this is not a perfect 2:1 split, it appears that Judge Feuerzeig was satisfied that it was a sufficient approximation.

4. Albert did not accede willingly to the decrees. On August 8, 1983, Bernadette went to the marital homestead with Ms. Bornn for the purpose of collecting personal clothing and jewelry, which the Territorial Court's July 7, 1983 order had also awarded her. Albert went into a rage at Bernadette's presence and attempted to choke her; the police were called and charges of aggravated assault and battery were filed against him. Police reports filed at the time of the incident indicate that Bernadette had abrasions on her neck and that she was taken to a hospital where she received medical treatment and Darvon. *See* Affidavit of Bernadette Charles, 8–31–

83, and attached exhibits. Albert refused to vacate the marital homestead as directed on August 31, 1983, and, upon Bernadette's motion, Judge Feuerzeig entered a second order on November 17, 1983, directing Albert to vacate those premises. Despite Judge Feuerzeig's orders, Albert refused to do so. Inasmuch as Albert maintained that he was acting upon the advice of his counsel, Judge Feuerzeig declined Bernadette's invitations to find Albert in contempt. On June 4, 1985, Judge Feuerzeig entered a third order directing Albert to vacate the marital homestead and deliver a quitclaim deed to the premises to Bernadette. Judge Feuerzeig's order provided further that upon Albert's failure to quitclaim the property by July 1, 1985, the Clerk of the Territorial Court would execute such a deed. *See* Order filed June 11, 1985.

5. Specifically, the Territorial Court said:

[i]n view of the contribution for the purchase of the Estate Pearl homestead, which came largely from the proceeds of the sale of the property owned by the defendant [Albert] prior to the marriage of the parties, the court would be inclined to find that the equities in the property would be on a 50–50 basis. The court believes, however, that it also must take into account the fact that the breakdown of the marriage appears to have been due solely to defendant's conduct, which included not only the fathering of a child outside the marriage, but a pattern of constant arguments and fights resulting in the court having to issue an order restraining each party from harrassing or molesting the other.

divide the marital homestead in accordance with the "equity of the case" is no longer effective since the 1973 amendment of the Virgin Islands divorce statute, V.I.Code Ann. tit. 16 §§ 104, 109, to exclude fault as a ground for divorce and as a factor in influencing decisions pertaining to alimony, support and certain other related matters. Assuming that §§ 104 and 109 do not override § 2305(d), the second issue is whether § 2305(d)'s "equity of the case" criterion permits consideration of marital fault in appropriate cases.

A brief historical survey of the relevant Virgin Islands law relating to divorce and marital property distribution is instructive. In 1973, the Virgin Islands legislature amended § 104 of the divorce statute to eliminate fault as a ground for divorce.[6] At the same time, the legislature amended § 109 of the divorce statute specifically to exclude consideration of marital fault in decisions pertaining to child custody and support, alimony, the possession or control of personal property of the other party,

and the wife's decision to change her name. Section 109 now directs the divorce court to consider the "needs and welfare" of the children with regard to custody and child support, and the "need" of a party for support and maintenance with regard to alimony, irrespective of marital fault.[7]

Quite significantly for present purposes, the legislature did not enact, as have most other jurisdictions, *see infra* at Part IV, a comprehensive legislative scheme covering all of the spouses' marital property, real and personal. Instead, the legislature left intact its Homestead Distribution Statute (contained, not in the Divorce Code, but in Chapter 81 of the Virgin Islands Code, dealing with taxation and finance. V.I. Code Ann. tit. 33, §§ 1–4001 (1967 & Supp. 1985)) which provides in relevant part:

> The homestead protection and exemption provided in this section shall continue to attach to the property after the death of the owner thereof, and shall inure to the favor of the surviving

---

**6.** V.I.Code Ann. tit. 16, § 104 [Supp.1985] as amended, reads as follows:

> A decree granting a legal separation or dissolving a marriage may be entered when the court is satisfied from the evidence presented that there has been a breakdown of the marriage relationship to the extent that the legitimate objects of matrimony have been destroyed and there remains no reasonable likelihood that the marriage can be preserved.

Prior to the amendment a divorce could be granted only for one of the following causes:

> (1) impotency existing at the time of the marriage and continuing to the commencement of the action;
> (2) adultery;
> (3) conviction for felony;
> (4) willful desertion for the period of one year;
> (5) cruel and inhuman treatment calculated to impair health or endanger life;
> (6) insanity of either spouse occurring after marriage;
> (7) habitual gross drunkenness contracted since marriage and continuing for one year prior to the commencement of the action; or
> (8) incompatibility of temperament.

**7.** Prior to 1973, V.I.Code Ann. tit. 16, § 109 gave preference in child custody to the party not in fault; child support and alimony were recoverable only from the party in fault; and only an innocent wife could recover her personal prop-

erty and/or change her name. Section 109, as amended, provides in full that:

> Whenever a marriage is declared void or dissolved the court may, without regard to any determination that the breakdown of the marriage was the fault of one party or the other, further decree:
> (1) for the future care and custody of minor children of the marriage as it may deem just and proper, having due regard to the age and sex of such children and giving primary consideration to the needs and welfare of such children;
> (2) for the recovery from the party not granted care and custody of such children such an amount of money, in gross or in installments, as may be just and proper for such party to contribute toward the nurture and education thereof;
> (3) for the recovery for a party determined to be in need thereof an amount of money in gross or in installments, as may be necessary for the support and maintenance of such party;
> (4) for the delivery to the wife of her personal property in the possession or control of the husband at the time of giving the judgment;
> (5) for the appointment of one or more trustees to collect, receive, expand, manage, or invest, in such manner as the court shall direct, any sum of money necessary for the maintenance of the wife or the nurture and education of minor children committed to her; or
> (6) to change the name of the wife.

spouse while the latter continues to occupy the said homestead, and after the death of both spouses, to the favor of their children until the youngest surviving of these shall have attained majority. In case either spouse shall abandon the home, the homestead protection and exemption shall continue in favor of the spouse who occupies the property as a dwelling; and *in the case of a divorce, the court which grants it shall make disposition of the homestead in accordance with the equity of the case.*

V.I.Code Ann. tit. 33 § 2305(d) (emphasis supplied).[8]

Albert argues that the legislature's 1973 decision to amend the Virgin Islands divorce statute to exclude fault as a ground for divorce and as a factor influencing decisions pertaining to alimony and support, *see* discussion *supra* at 963, implies a legislative intent to exclude consideration of marital fault from *all* divorce-related proceedings, including those involving the disposition of the marital homestead. He thus argues that the new Virgin Islands divorce laws have in effect overridden that portion of V.I.Code Ann. tit. 33, § 2305(d), that permits a divorce court to consider the "equity of the case" in the disposition of the marital homestead. In the alternative, Albert argues that even if a court can consider "equity of the case," that phrase, as used in § 2305(d), refers to equities in a pure property sense, *i.e.*, the value of the property the spouses contributed to the marriage, rather than to equities in the common-law sense. Once again, Albert's conclusion is that Judge Feuerzeig erred by considering Albert's role in the breakup of the marriage in the disposition of the marital estate.

Bernadette counters both of Albert's arguments. As to the first, she argues that there is no ground for reading the divorce law amendment as a *de facto* repeal of § 2305(d). It is well within the power of the Virgin Islands' legislature to repeal § 2305(d), she argues, and as it has not done so, this court should not. In response to Albert's second argument, Bernadette argues that the most natural reading of the phrase "equity of the case" in § 2305(d) suggests that the Territorial Court may, in its discretion, consider marital misconduct in an appropriate case. Had the legislature intended a narrower compass for decision, she argues, it would have provided for distribution in accordance with the "equities of the parties" or "the parties' respective equities in the homestead." As Albert has offered no evidence of legislative intent to the contrary, Bernadette concludes the most natural reading should prevail.

Our review of Virgin Islands case law reveals no prior cases where marital fault was expressly cited as a factor influencing the disposition of a marital homestead under § 2305(d). Neither, apparently, has the question whether marital fault could be considered in such dispositions heretofore been either raised or addressed, at least not in any published opinion. *See, e.g., Dyndul v. Dyndul*, 541 F.2d 132 (3d Cir.1976). We are, therefore, faced with two questions of first impression.

### III.

Because neither § 104 nor § 109 refers explicitly to § 2305(d), we look first to the legislative history of the 1973 amendments to the divorce statute to see if we can glean from that history a legislative intent to override § 2305(d). The legislative history

---

**8.** Section 2305(d) deals only with the marital homestead. Since the homestead refers only to the place occupied by the spouses, *see supra* n. 1, and since there are no other applicable statutes, there is a lacuna in the statutory scheme: there are no provisions for the disposition of non-occupied realty. Had the Territorial Court's authority to distribute Bernadette and

Albert's real estate located at Estate Mandahl been challenged it would thus have been open to serious question. As this court has noted with respect to Virgin Islands law, "[t]o date, the only such authority the legislature has seen fit to bestow on divorce courts is the power to award a homestead." *Dyndul v. Dyndul*, 541

of §§ 104 and 109 [9] does not mention Section 2305(d) and lacks any indicia whatsoever of legislative disapproval of that statute. Rather, the expression of legislative intent reflects other concerns: that a divorce should not be available only at the instance of the injured party and that

> the wife ought to be entitled to her personal property in the possession and control of the husband, whether or not she is a party at fault ... [and] that the question of custody ought to be determined on the basis of what is best for the child and what the capability of the parties involved [is] to provide the necessary care and custody of those children regardless of who is at fault.[10]

Amendments to the divorce statute addressed these concerns through adoption of a standard for awarding child custody and support that is based solely upon the "needs and welfare" of the children and, a standard for awarding alimony that is based solely upon the "need" of a party for support and maintenance, regardless of fault. No such limitations were placed upon the divorce court's separate grant of jurisdiction to distribute the "marital homestead," however. There is thus no evidence that the 1973 amendments to the divorce statute override the legislative mandate in § 2305(d), and we hold that they do not.

Our conclusion is supported by the fact that the Virgin Islands Legislature's decision to enact a type of "no-fault" divorce statute yet leave its homestead distribution statute separate and intact is not unusual. Indeed, the Virgin Islands' scheme is quite similar to those of several states. Despite the fact that every American jurisdiction except South Dakota has some form of "no-fault" divorce,[11] "it is not uncommon to find that it is permissible to utilize fault for purposes of awarding alimony or splitting property when the divorce itself is granted on 'no-fault' grounds."[12]

## IV.

Having determined that the 1973 amendments to the Virgin Islands divorce statute do not affect a divorce court's prerogative to consider the "equities of the case" in dividing the marital homestead, we turn to the second question: whether § 2305(d)'s "equity of the case" criterion permits consideration of marital fault in an appropriate case, or whether it permits the court to consider only the economic benefit that the spouses contributed to the marriage. We conclude that § 2305(d) permits the consideration of marital fault.

The plain meaning of "equity of the case" is that courts may consider marital fault.[13] "Equity of the case" is a famil-

F.2d 132, 134 (3d Cir.1976). *See also Todman v. Todman,* 571 F.2d 149 (3d Cir.1978).

**9.** Legislative History, Bill No. 5836, amending 3 V.I.Code Ann. tit. 16, § 104, introduced by Senator Sheen and passed April 24, 1973, No. 3418, § 1, 1973 V.I.Sess.Laws 45 [hereinafter referred to as Legislative History § 104].

**10.** Legislative History § 104, pp. 6–7.

**11.** Freed and Walker, Family Law in the Fifty States: An Overview, 18 Fam.L.Q. 369, 379 (1985).

**12.** 3 Sutherland, Statutory Construction § 68.06 (Supp.1985). *See also* Clark, Divorce Policy and Divorce Reform, 42 U.Colo.L.Rev. 403, 410 (1971) which notes: "It should be recognized, however, that the elimination of fault as grounds for divorce does not necessarily or logically dictate its elimination from questions of

property." *See generally* 24 Am.Jur.2d *Divorce & Separation* § 928 (1983).

**13.** We note that V.I.Code Ann. tit. 1 § 42 (1967 & Supp.1985) [Rules of Construction: words and phrases] provides:

> Words and phrases shall be read with their context and shall be construed according to the common and approved usage of the English language. Technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to their peculiar and appropriate meaning.

In this regard, Black's Law Dictionary, 482 (5th ed.1979) defines "equitable" as "[j]ust; comformable to principles of justice and right. Existing in equity; available or sustainable in equity, or upon the rules and principles of equity. "Equity" is defined as "[j]ustice administered according to fairness as contrasted with the strictly formulated rules of common law." *Id.* at 484.

iar legal term that has been interpreted as a broad grant of jurisdiction to the courts, and any other interpretation of that phrase in § 2305(d) would be an unwarranted limitation of the term. This conclusion conforms to our prior observations that the jurisdiction of Virgin Islands divorce courts, while based in statute, is considered equitable in nature, *Poe v. Poe,* 409 F.2d 40, 44 (3d Cir.1969), and that divorce courts may "use a variety of means to obtain an equitable result [under Section 2305(d) ]," *Stridiron v. Stridiron,* 698 F.2d 204, 207 (3d Cir.1983). Although a statute's plain meaning can be overridden by a showing of clear, contrary legislative intent, *Paskel v. Heckler,* 768 F.2d 540, 543 (3d Cir.1985), there is no such evidence here. There is no legislative history of § 2305(d). The general legislative history of Chapter 81 (which

contains § 2305(d)) does not mention § 2305(d) or the term "equity of the case." Nor does the definitional section, V.I.Code Ann. tit. 1 § 41 (1967 & Supp.1985) provide guidance. Thus, the plain meaning must prevail.

■ Our conclusion is supported by the fact that other jurisdictions with statutes similar to § 2305(d) have interpreted them, as have we, to permit consideration of marital misconduct or fault in a distribution of property proceeding.[14] Even jurisdictions that lack specific statutory guidelines provide that consideration of marital misconduct in a property division is "a matter for the discretion of the trial court," *Dowdy v. Dowdy,* 473 So.2d 1091, 1092–93 (Ala.Civ. App.1985).[15] The rationale for allowing

**14.** *See, e.g.,* [District of Columbia] *Hairston v. Hairston,* 454 A.2d 1369, 1972 (D.C.App.1983) (trial court, "upon consideration of all the equities," could consider "faithful performance of marriage vows" as a factor in property division; [Kansas] *Bohl v. Bohl,* 232 Kan. 557, 657 P.2d 1106 (1983) (where statute was silent on the issue, marital fault could be considered when dividing property); [Missouri] *Sandin v. Sandin,* 688 S.W.2d 50, 52 (Mo.Ct.App.1985) (where statute required a "just" distribution of property, marital misconduct could be taken into account); [New Jersey] *D'Arc v. D'Arc,* 164 N.J.Super. 226, 237, 395 A.2d 1270, 1277–78 (1978), *aff'd,* 175 N.J.Super.A.D. 598, 421 A.2d 602, 604 (1980) *cert. denied* 451 U.S. 971, 101 S.Ct. 2049, 68 L.Ed.2d 350 (1981) (where statute required equitable distribution of property, "there [was] no statutory bar to considering 'fault' in dividing the marital assets," and marital fault of sufficient magnitude could be considered in property division); [North Dakota] *Lentz v. Lentz,* 353 N.W.2d 742, 744 (N.D.1984) (statute requiring "just and proper" distribution of property permitted consideration of marital fault); [Texas] *Welch v. Welch,* 694 S.W.2d 374, 376 (Tex.Civ.App.1985) ("just and right" division of property may include consideration of "the fault in breaking up the marriage"); [Vermont] *Victor v. Victor,* 142 Vt. 126, 453 A.2d 1115, 1117 (1982) (property distribution statute which allowed trial court to consider, among other factors, the "relative merits of the parties" permitted consideration of marital fault).

**15.** *See also Parrish v. Parrish,* 138 Mich.App. 546, 558, 361 N.W.2d 366, 372–73 (1984) ("The trial court has great discretion in the adjustment of property rights. In dividing marital assets, the trial court is directed to examine ... fault or

past misconduct, and other equitable circumstances.). In Connecticut

"General Statutes § 46b–81 sets forth certain criteria for the court to consider in making an assignment of property. Although in making its financial determinations the court is required to consider these criteria; in the exercise of its inherent equitable powers it may also consider any other factors which may be appropriate for a just and equitable resolution of the marital dispute ... [including marital misconduct]."

*Robinson v. Robinson,* 187 Conn. 70, 72, 444 A.2d 234, 235–36 (1982) (citations omitted). *Accord* [Florida] *Tronconi v. Tronconi,* 425 So.2d 547, 549–50 (Fla.Dist.Ct.App.1982) (Fla.Stat.Ann. § 61.08(2)(a–f) (West 1985) provides that the trial court, in effectuation of equitable distribution of marital property, may consider "any other factor necessary to do equity and justice between the parties"); [Maryland] *Schweizer v. Schweizer,* 301 Md. 626, 630, 484 A.2d 267, 269 (1984) (Md. [Fam.Law] Code Ann. § 8–205(a)(1)(10) (Michie 1984), specifies ten factors which must be considered in a property division with the tenth being "any other factor that the court considers necessary or appropriate to consider in order to arrive at a fair and equitable monetary award").

We also note that at least two states have statutes that specifically authorize consideration of marital misconduct for the purpose of a property division. Mass.Gen.Laws Ann. ch. 208, § 34 (West Supp.1985); R.I.Gen.Laws § 15–5–16.1 (Michie Supp.1985). However, it would not be improvident for a state to proscribe the consideration of marital fault in the distribution of the marital homestead. Indeed, eleven states have done so through express statutory provisions. *See* Ariz.Rev.Stat.Ann. § 25–318(A) (Supp.1980–81); Colo.Rev.Stat. § 14–10–113(1) (1973 &

marital misconduct to be utilized as a factor in the property disposition calculus is that "a spouse whose conduct has contributed substantially to the breakdown of the marriage should not expect to receive a financial kudo for his or her misconduct." *Robinson,* 187 Conn. at 72, 444 A.2d at 236; *see generally* 24 Am.Jur.2d *Divorce and Separation,* § 927 (1983). We realize that many jurisdictions, following the same reasoning, refuse to award alimony to a guilty spouse.[16] However, the fact that the Virgin Islands Legislature elected to exclude consideration of marital fault from alimony determinations does not, standing alone, reflect an intent to exclude such a consideration in property distribution proceedings.[17] The Virgin Islands is not alone in adopting a statutory scheme that expressly excludes consideration of marital fault in one determination but not in the other.[18]

We concede that "equity of the case" could also refer to the extent to which the

spouses have brought income and property to the marriage. In two cases, *Knowles v. Knowles,* 354 F.Supp. 239 (D.V.I.1973), and *Smith v. Smith,* 337 F.Supp. 475 (D.V.I. 1972) the court did precisely that. Neither case, however, addressed the issue we face here, for neither case involved marital fault. Thus, neither case has precedential value on this point.

## V.

■ We conclude that a property distribution proceeding under § 2305(d) is neither dependent upon nor subject to the standards established by V.I.Code Ann. tit. 16, §§ 104, 109 (Supp.1985), and that the plain meaning of § 2305(d) confers a broad grant of equitable discretion to divorce courts. *See Stridiron,* 698 F.2d at 207. The Territorial Court's distribution of the marital property was an intelligent and fair disposition. Therefore, the judgment of the District Court will be affirmed.[19]

Supp.1982); Del.Code Ann. tit. 13, § 1513(a) (1981); Ill.Rev.Stat. ch. 40, § 503(c) (1981); Ky. Rev.Stat.Ann. § 403.190(1) (Bobbs-Merril Supp. 1982); Minn.Stat.Ann. § 518.58 (West Supp. 1981); Mont.Code Ann. § 48–321(1) (Supp. 1977); Pa.Stat.Ann. tit. 23, § 401(d) (Purdon Supp.1985); Wash.Rev.Code Ann. § 26.09.080 (Supp.1981); accord Alaska Stat. § 09.55.210(b) (Supp.1982) ("without regard to which of the parties is in fault"); Or.Rev.Stat. § 107.036(3) (1979) ("The court shall not consider the fault, if any, of either of the parties."). The Virgin Islands could do the same.

16. *See* 24 Am.Jur.2d *Divorce and Separation,* § 643 (1983); *see generally* Annot., 86 A.L.R.3d 97 (1978); Annot., 86 A.L.R.3d 1116 (1978); *see also* Annot., 28 A.L.R. 4th 786 (1984).

17. It is possible that the legislature's decision to exclude consideration of fault in some but not all proceedings attendant to a divorce represents a conscious policy decision. Having removed marital misconduct as a ground for divorce and the denial of alimony, the legislature may have deemed it desirable to leave one area in which fault is relevant so that the trial court could consider the impact of marital misconduct on an innocent spouse. We, of course, express no views on matters of policy and concede that the underlying policy questions could be resolved quite differently. *See infra* n. 19.

18. *See, e.g.,* Pa.Stat.Ann. tit. 23, §§ 401(d), 501(b)(14) (Purdon Supp.1985) (marital miscon-

duct excluded for property distribution, but not for alimony); *cf.* [Michigan] *Parrish v. Parrish,* 138 Mich.App. 546, 557–58, 361 N.W.2d 366, 372–73 (1984) no specific statutory guidelines) ("In determining the amount of alimony to be awarded, the court should consider (1) the duration of the marriage, (2) the contributions of the parties to the joint estate, (3) the age of the parties, (4) their health, (5) their stations in life, (6) the necessities and circumstances of the parties, and (7) the earning ability of the parties.... In dividing marital assets the trial court is directed to examine several factors: the duration of the marriage, contributions of the parties to the joint estate, the parties' station in life and earning abilities, fault or past misconduct, and other equitable circumstances.").

19. Since Bernadette was not living in the marital homestead at the time she filed for divorce, Albert also argues that the court was not authorized to dispose of the homestead to the spouse who had "abandoned" it. He relies upon V.I. Code Ann. tit. 33 § 2305(d), which provides that "[i]n case either spouse shall abandon the home, the homestead protection shall continue in favor of the spouse who occupies the property as a dwelling." However, § 2305(d) provides further that "in the case of *divorce,* the court which grants it shall make a disposition of the homestead in accordance with the equity of the case." (emphasis supplied) In *Todman v. Todman,* 571 F.2d 149 (3d Cir.1978), we recognized that "[a]s to both death and abandonment, [§ 2305(d)] addresses [only] *continuation* of the

GARTH, Circuit Judge, dissenting:

The decision of the Virgin Islands legislature to amend its divorce statute evinces a clear and explicit intention to eliminate marital fault as a factor in the adjudication of divorce cases. *See* V.I.Code Ann. tit. 16, § 109 (Supp.1985). The majority's opinion ignores the purpose and entire thrust of the post-1973 statutory scheme and reads fault back into the law. I therefore dissent from the holding of the majority and would hold instead that the amended legislation be given its full, complete, and clear meaning, and that the present case be remanded for a decision not based in any way on an evaluation of marital fault.

Until 1973, § 109 required that, "unless otherwise manifestly improper," the court give preference to the party not at fault in awarding custody of children and child support, and provided for "the recovery from the party in fault such an amount of money ... as may be just and proper for such party to contribute to the maintenance of the other."

In 1973, § 109 was amended to delete any mention of fault. The Virgin Islands Assembly added the clause, "without regard to any determination that the breakdown of the marriage was the fault of one party or the other," to the general empowering clauses at the head of § 109, and provided that child custody should be determined "giving *primary consideration* to the needs and welfare of the children." These changes evince a general determination to eliminate any consideration of fault, not only in the granting of the divorce itself, *see* V.I.Code Ann. tit. 16, § 104 (Supp.1985), but also in the ensuing disposition of property and in the awarding of child custody.

However, the language of V.I.Code Ann. tit. 33, § 2305(d) that referred to disposition of the homestead "in accordance with the equity of the case" was not amended.

This section, which is found in the Taxation and Finance section of the Virgin Islands Code and *not* in the statute addressing domestic relations, does bear tangentially on the issue before us because, among other things, it contains the provision on which the majority has decided this case.

Section 2305 is the Homestead provision of the Virgin Islands Code. Among other things, it defines homestead property, it provides for exemption of homestead property from real estate tax, it provides for continuation of the homestead exemption after an unmarried person dies, it provides criminal penalties for anyone improperly seeking the benefits of the homestead exemption, and it incidentally provides that "in the case of a divorce, the court which grants it shall make disposition of the homestead in accordance with the equity of the case." § 2305(d).

The majority's decision of this appeal is based on two conclusions: 1) that the amendment of § 109 to eliminate fault in the granting of a divorce, the awarding of alimony and custody, and the disposition of personal property did not operate to overrule § 2305(d), and 2) that the provision in § 2305(d) for consideration of the "equity of the case" in the disposition of the marital homestead allows for full consideration of marital fault in an appropriate case.

I concede that amended § 109 does not make direct reference to the Homestead provision in the tax code. It would have been better had it done so. However, just because the legislature of the Virgin Islands did not comb through the entire Virgin Islands Code when it attempted to replace "fault" with "no fault" in divorce proceedings, is no reason to hold that a statute outside of the domestic relations context permits consideration of fault when the legislature has unequivocally rejected that factor. The majority admits that no

---

'homestead protection and exemption'; as to divorce, the section specifically empowers the court to *dispose* of the 'homestead'." (emphasis in original) (footnote omitted) *Id.* at 152. Thus, it is abundantly clear that in the event of divorce, as opposed to abandonment, the mari-

tal homestead is to be disposed of in accordance with the "equity of the case," and not according to which spouse remains in the marital dwelling after the divorce is filed, Albert's other contentions on appeal are frivolous and not worthy of discussion.

decision has been reported in the Virgin Islands in which fault has been a consideration in the awarding of homestead rights upon divorce. Thus, it cannot be said that a prior practice of considering fault in the division of marital real property has been carried forward even after the 1973 amendments to § 109.

My answer to the question of whether the disposition of homestead property permits consideration of fault is that it does not. First, there has been no historic or traditional interpretation allowing for ·the consideration of fault in dividing homestead property prior to the amendment of the statute. Second, the amendment of § 109 forcefully expresses the legislature's view that fault has no place in the scheme of property division when a divorce takes place—the primary considerations being the contributions of each party to the homestead and the maintenance or sustenance of spouse and children. Lastly, the very statute itself which speaks in terms of "dispos[ing] of the homestead in accordance with the equity of the case" does not connote that equity includes fault.

Rather, in my view, "equity of the case" should be read to include only the various *non-fault* factors generally addressed under modern equitable distribution statutes. These factors include the age, background, and earning abilities of the parties, the duration of the marriage, the standard of living of the parties during the marriage, contributions to the marital estate of each of the parties, present income, employment prospects, and mental and physical health of the parties, the source of income and property acquired during the course of the marriage, gifts between the spouses during the marriage, and debts and liabilities of the parties. These and other factors may properly be addressed in order to effect an equitable distribution of the marital homestead without resort to consideration of marital fault. *See Painter v. Painter*, 65 N.J. 196, 320 A.2d 484 (1974).

This reading of "equity of the case" is consistent with the treatment given to similar language in other states. For example, the New Jersey Supreme Court concluded, in interpreting a statute providing for an "equitable distribution of the property," that "fault of a marital nature is not an appropriate criterion for consideration in effecting an equitable distribution of marital assets." *Painter v. Painter*, 65 N.J. 196, 212, 320 A.2d 484, 492 (1974). In a companion case, *Chalmers v. Chalmers*, 65 N.J. 186, 320 A.2d 478 (1974), the New Jersey Supreme Court explained that "fault may be merely the manifestation of a sick marriage," and that "[t]he concept of fault is not relevant to [equitable] distribution since all that is being effected is the allocation to each party of what really belongs to him or her." *Id.* at 193, 320 A.2d at 482–83. The court concluded that "we are satisfied that the concept of equitable distribution requires that fault be excluded as a consideration." *Id.* at 193, 320 A.2d at 482.

The New Jersey Supreme Court reached this conclusion regarding the consideration of marital fault *even though* the New Jersey statute provided that fault *could* be taken into account in awarding alimony. *See Painter*, 65 N.J. at 205, 320 A.2d at 488. Indeed, if fault is to be considered only with regard to some aspects of the divorce proceeding and not others, it seems more reasonable to examine marital fault in connection with the awarding of alimony rather than in the division of property, where the respective contributions of the parties should perhaps be a central concern. That is New Jersey's approach. *See also* Pa. Stat. Ann. tit. 23, §§ 401(d), 501(b)(14) (Purdon Supp.1985) (marital misconduct considered for alimony, but excluded for property distribution).

It is true, as the majority notes, that several states do permit consideration of fault in the division of marital property. However, the majority cites to no Virgin Islands authority supporting its position that "equity of the case" includes fault; it cites only to authority of other jurisdictions in different contexts. Indeed, most states permitting consideration of fault have statutes containing so-called "catch-all" provi-

sions permitting a court to consider any other factor deemed "just and proper." *See Hinton v. Hinton,* 70 N.C.App. 665, 321 S.E.2d 161, 162 (1984). Even among these "catch-all" states, there is a split of opinion on whether fault is a proper consideration in the distribution of marital property, and several such states have excluded it. *See, e.g., Blickstein v. Blickstein,* 99 A.D.2d 287, 472 N.Y.S.2d 110 (2d Dept. 1984); *Hinton,* 321 S.E.2d at 163. In the absence of specific statutory authorization for the consideration of marital fault in these other jurisdictions, and even where fault *may* be considered in the granting of the divorce and the awarding of alimony, I think the better rule is to exclude consideration of fault in the equitable distribution of marital real property.

In the Virgin Islands, however, we are faced with a much simpler situation. We are remitted to what the Virgin Islands legislature has effected by repealing the old § 109 and adopting the new § 109 with but one significant addition: the inclusion in the preamble of the statement that divorce decrees are to be rendered *"without regard* to any determination that the breakdown of the marriage was the fault of one party or the other." (emphasis added). The Territorial legislature thus has made crystal clear, through its 1973 amendment of § 109, that it desires to join the modern trend in barring any consideration of marital fault from divorce decisions. In this context, I can see no justification for reading the out-of-context clause of § 2305(d)—contained not in the Virgin Islands divorce statute but in the Homestead subsection of the tax law—to permit such an inquiry.

I would therefore hold that the district court erred as a matter of law in affirming the judgment of the Territorial Court, and would remand the present case to the district court with instructions to vacate the judgment and remand for further proceedings.[1]

---

**1.** The Territorial Court stated in its November 17, 1983 order that even if it had erred "by considering the equities," which I assume to mean by taking marital fault into account, it would still have awarded the homestead to the wife on the basis of need. Nevertheless, since it is unclear whether fault was improperly considered in the overall property distribution, and since the territorial court may have exceeded its powers in ordering the wife to quitclaim to the husband her interest in the Estate Mandahl property, *see Dyndul v. Dyndul,* 541 F.2d 132, 134 (3d Cir.1976), I would still vacate the judgment of the district court and remand with instructions.