## No. 31,553

FRANCES A. HOTCHKISS, *Appellant*, v. FLOYD FISCHER, *Appellee*.

(31 P. 2d 37.)

Opinion filed April 7, 1934.

*A. E. Crane, A. Harry Crane* and *Oscar Raines,* all of Topeka, for the appellant.

*T. M. Lillard, O. B. Eidson* and *O. D. Buck,* all of Topeka, for the appellee.

The opinion of the court was delivered by

SMITH, J.: This was an action to recover damages growing out of the purchase of shares of stock in a company by a director from a stockholder. A verdict was returned for plaintiff in the amount of $997.60. Plaintiff filed a motion to increase the amount found by the jury to $3,689.80. This motion was denied. Plaintiff appeals.

This case has been in this court before. (See *Hotchkiss v. Fischer,* 136 Kan. 530, 16 P. 2d 531.) Plaintiff is a widow and administratrix of the estate of her husband. Her husband left her 2,320 shares

of stock in the Elmhurst Investment Company. Early in January, 1927, she called on defendant, who was the president and managing officer of the company. Her purpose was to talk to defendant about her stock. She needed money. If there was to be a dividend declared she did not want to sell her stock. If there was to be no dividend she feared that it would be necessary to sell her stock at a loss. The result of her talks with defendant was that she sold him her stock for $1.25 per share. The next day a dividend of $1 was declared. When plaintiff learned of this she brought suit against defendant to recover the difference between the actual value of the shares and the price paid by defendant. Plaintiff charged that defendant was guilty of fraudulent conduct, misstatement and omission to give plaintiff information to which she was entitled at the time he purchased the stock. The first trial of the case resulted in a verdict and judgment for the defendant. On appeal this court reversed the judgment on the ground the court had not properly instructed the jury as to the duty owed by a president and director of a corporation as to disclosing the condition of the company to a stockholder where the president or director is about to purchase stock in the corporation from the stockholder. The Elmhurst Investment Company owned half of the stock of the Orlando Petroleum Company. At the first trial the financial statements of both companies as of December 31, 1926, were introduced in evidence. The case turned largely on whether the defendant made sufficient disclosure of the value of the stock and condition of the company by showing plaintiff these statements.

These statements were also used in the trial of the case the second time. Under the rule announced in *Hotchkiss v. Fischer*, supra, the jury found the defendant guilty of fraud and of inducing plaintiff to sell him her stock by false answers to plaintiff's inquiries about a dividend. No motion for a new trial was filed by defendant—so that question is settled. One element necessary for plaintiff to establish was the actual value of the stock at the date it was bought by defendant; since she would be entitled to recover the difference between the actual value and the price she received.

The rule contended for by appellant was that the value of the assets over and above the liabilities should be ascertained. This should be divided by the number of shares outstanding. This would give the value of each share. From this amount the sum received by plaintiff, or $1.25, should be subtracted and the remainder multi-

plied by the number of shares sold by plaintiff would give the amount that should be recovered by the plaintiff.

On the other hand, defendant argues that the value of the assets and the amount of liabilities are not the only elements of actual value which it was the duty of the jury to consider. He points out instruction No. 10 and instruction No. 11 that were given by the trial court as follows:

"10. If you find in favor of the plaintiff, the measure of her recovery is the difference between the price paid to plaintiff for her stock and the actual and true value thereof at the time of the transaction, if the latter exceeds the former.

"11. In determining the actual value of plaintiff's stock at the time of the transaction, you are entitled to take into consideration testimony as to the value of the assets of the Elmhurst company and of the Orlando company, and also evidence as to the indebtedness and liabilities of both of said companies; and if the evidence discloses there was a general market for the sale of Elmhurst stock you are entitled to take into consideration testimony as to the sales of stock of said company at or near the time of the transaction between plaintiff and defendant; also opinion evidence as to the value of said stock by individuals whom you may find from the evidence by their dealing in such stock have peculiar knowledge of the claimed market value of the stock of the Elmhurst company not possessed by the ordinary person; also testimony concerning business carried on by the Elmhurst company and the Orlando company; dividends paid; the number of stockholders and the extent of the distribution of the stock of the company; and of the personnel of the management of the corporation at and before the time of the transaction in question. Evidence as to book value of the stock of the corporation has been introduced in evidence, and this you may also take into consideration. No one alone of the elements that I have mentioned is controlling of the value, but from the consideration of all these elements it is your duty to determine the fair, actual and true value of the stock of the plaintiff at the date of the transaction."

Appellee sets out eight elements of value which he insists the jury should have considered. They are as follows:

"1. Testimony as to the value of the assets of the Elmhurst Investment Company and the Orlando Petroleum Company.

"2. Evidence as to the indebtedness and liabilities of both companies.

"3. If the evidence discloses a general market for the stock, you are entitled to take into consideration testimony as to the sale of stock at or near the time of this transaction.

"4. Also opinion evidence as to value of the stock by those having peculiar knowledge.

"5. Testimony concerning the business carried on by the Elmhurst Investment Company and the Orlando Petroleum Company.

"6. Dividends paid.

"7. The number of shares, the number of shareholders, and the extent of the distribution of the stock of the company.

"8. The personnel of the management of the company at and before the time of the transaction."

At the outset of the trial the parties agreed as to the actual value of the assets except for two items that were found by the jury. Thus the admitted and proven value of the assets of the Elmhurst company was $631,419.16. The liabilities were $156,753.61. This made the total actual value of the company equal $474,665.55. The actual value of the assets of the Orlando company was $401,445.90. The liabilities were $212,762.84. This made the total actual value of the assets equal $188,683.06. Plaintiff then points out that since the Elmhurst company owned half the stock of the Orlando company it should be credited with one-half the value of its assets. The final calculation is made as follows:

One-half of $188,683.06 equals.................................... $94,341.53
Total of Elmhurst Co........................................... 474,665.55

$569,007.08

There were 200,000 shares of stock of the Elmhurst Co. to be divided into the foregoing so as to determine the value of one share.

Total value of stock per share..................................... $2.84
Mrs. Hotchkiss recd. on stock per share............................ 1.25

Balance due Mrs. Hotchkiss....................................... $1.59
2,320 shares at $1.59, $3,688.80

The jury awarded plaintiff $997.60. Calculated on the above formula, this amount indicates that the jury reached a value of 43 cents per share in addition to the $1.25 plaintiff had been paid, or $1.68. There is no basis in the statements for such a valuation.

Plaintiff points out that there was an item of $138,649.10 which was carried on the financial statement of the Elmhurst Investment Company as a contingent liability. The court instructed the jury that they should not consider this item. She points out that if the jury had calculated the value of the assets and counted this amount as a liability the value of each share would have been 69 cents less than as if it had been calculated using the figures pointed out heretofore in this opinion. She also points out an item of $188,683.06 in the statement of the Orlando company. She argues that the Elmhurst company was entitled to one-half of that amount, or $94,341.53. She argues that if the jury had failed to grasp the fact that this amount should have been added to the value of the assets of the Elmhurst

company the value of the shares would have been 47 cents less than if they had been calculated by the proper formula. She then adds 47 cents and 69 cents. This makes $1.16 less a share. Plaintiff then subtracts this amount from $1.59, which is the value she claims should have been found according to the formula for which plaintiff is contending. This subtraction leaves 43 cents, the valuation upon which the jury based its verdict. The plaintiff argues that it is plain from this that the jury failed to include the two items mentioned. Plaintiff argues that the case should be disposed of under the rule followed where the findings make it obvious that the jury has failed to apply the correct mathematical formula to the proven and admitted facts.

Defendant relies on the correctness of the instruction heretofore set out in this opinion. That instruction sets out some eight elements to be considered in arriving at the value of the corporate stock. This instruction was based on the rule laid down in 22 C. J. 186. The rule given there is as follows:

"Where corporate stock is not listed on any exchange and has no regular market value, evidence of the value of the assets of the corporation and its indebtedness, liabilities, or insolvency is admissible to show the value of the stock; or such value may be determined by ascertaining the nature, amount, and permanency of the business done by the corporation; the dividends paid, the control of the stock, the management, the market for articles sold, if the business is a commercial one, and other circumstances of like nature legitimately bearing upon the questions of value and income."

The rule in the text is based on *Moffit v. Hereford*, 132 Mo. 513, 343 S. W. 252. There the court said:

"Where one is to be charged for stock which has no ascertainable market value, its actual value must be taken, in determining which the value of the corporate assets, the dividends paid, the character and permanency of the business, the control of the stock, and other circumstances of a like nature may be taken into consideration." (Syl. ¶ 2.)

See, also, *Oxford Paper Co. v. United States*, 52 F. 2d 1008; also, *Blabon v. Hay*, 269 Mass. 401, 169 N. E. 268.

In considering this case we have seen what the evidence was as to the value of the assets and liabilities of the companies. The testimony as to the market value of the stock was that it sold for from 95 cents to $1.10. The jury evidently did not rely solely on this evidence because if it had, no general verdict of actual damage would have been returned for the plaintiff, since she had already re-

ceived $1.25. This cannot be said, however, of the business carried on by the companies. Both companies were engaged in the business of seeking for and recovering oil from the ground on a group of oil leases the company held, and drilling wild-cat wells in endeavoring to locate new oil fields. It is doubtful if there is a more hazardous business from the standpoint of stability of stock values. The jury could very well have given this evidence considerable weight when debating whether to find that the value of the stock was equal to the value of the assets. The soundness of the rule contended for by plaintiff would presume that a stockholder could lift the value of his stock out of a going company at any time. This cannot be done. The only thing a stockholder can do with stock in a going company is to sell it or keep it and take his chance on dividends.

The rule contended for by the plaintiff would cause this court to enter the realm of speculation as to what the jury considered in arriving at its verdict. The explanation advanced by plaintiff as to the calculations of the jury in arriving at its general verdict is not a case like the ones we have considered where the jury had found the number of acres planted to wheat, the number of bushels produced and the price per bushel and deliberately used the wrong figure for calculating the cost of planting and producing the wheat. We cannot say that the jury intended only to consider the value of the assets. We have seen that there were other elements which it was its duty to consider. We have concluded that the motion of plaintiff was properly denied.

The judgment of the trial court is affirmed.