No. 54,376

NANCY LOU BOHL, *Appellee,* v. ROBERT J. BOHL, *Appellant.*

(657 P.2d 1106)

Opinion filed January 14, 1983.

*Charles S. Fisher, Jr.,* of Fisher, Ochs and Heck, P.A., of Topeka, argued the cause and was on the brief for the appellant.

*John W. Brand,* of Stevens, Brand, Lungstrum, Golden & Winter, of Lawrence, argued the cause and *Gerald L. Goodell,* of Goodell, Stratton, Edmonds, Palmer & Wright, of Topeka, was with him on the brief for the appellee.

The opinion of the court was delivered by

HERD, J.: This is a divorce action with the attendant division of property. This appeal is from the trial court's order dividing the property.

Nancy Lou Bohl and Robert J. Bohl were married June 18, 1952. They met while both were students at Kansas University. At the time of the marriage Robert was in the Air Force and Nancy had just graduated from college with a degree in education. In 1955 Robert was discharged from the Air Force. He then went to work for Nancy's father, M. W. Watson, who owned M. W.

Watson Construction Company, founded in 1923. Robert worked his way up through the ranks in the company until he became president and manager in 1965. The company prospered under his management.

During the early 1970's the relationship between Robert and Nancy began to deteriorate. They unsuccessfully attempted marriage counseling. Robert permanently moved from the family home in January of 1980.

Nancy filed for divorce in May of 1980. She alleged incompatibility, gross neglect of duty and extreme cruelty as grounds for divorce. Mrs. Bohl requested division of property and alimony. Mr. Bohl cross-petitioned on the same grounds as the petition.

The case was tried in June of 1981. The trial court granted a divorce at the time but took the matter of division of property under advisement. No appeal was taken from the decree of divorce. The court made its order dividing the family property December 14, 1981. The court stated the nature and source of the property, age of the parties, fault, length of the marriage, future earning capacities of the parties and family ties operated to cancel each other, "leaving neither party a foothold for advantage." Thus, the court said, the value of the property belonging to the parties should be divided evenly between them with Nancy Bohl to have assets producing income from interest and dividends and Robert Bohl to have the assets of the construction company. With those guidelines, the court then set out the division:

To Nancy Bohl:

| | |
|---|---:|
| 1st Natl. Bank checking account | $ 300.00 |
| Highland Park St. Bank checking account | 3,500.00 |
| Highland Park St. Bank savings account | 7,500.00 |
| Highland Park St. Bank cert. of deposit | 62,300.00 |

Stocks

| | |
|---|---:|
| 400 shares K.P. & L. | 6,800.00 |
| 108 shares Sperry-Rand | 5,500.00 |
| 135 shares Bendix | 8,000.00 |
| 200 shares Exxon | 13,000.00 |
| 200 shares T.R.W. | 5,400.00 |
| 485 shares Cessna | 17,000.00 |
| 152 shares Carnation | 4,700.00 |
| 6 shares The Continental Corp. | 200.00 |
| 334 shares Highland Park St. Bank | 41,800.00 |

| | |
|---|---:|
| 974 shares 1st Natl. Bank | 35,064.00 |
| 100 shares Massey-Ferguson Ltd. | 400.00 |
| 127 shares Pantasota | 400.00 |
| 200 shares Sun Chemical | 6,200.00 |
| 300 shares Carter Wallace, Inc. | 3,200.00 |
| 375 shares American Quaser Petroleum | 12,000.00 |
| Bond of City of LaCygne | 8,600.00 |
| Can-Am Resource Fund Partnership interest | 3,650.00 |
| Residence at 2821 Burlingame, Topeka, Ks. | 185,000.00 |
| Life insurance cash value | 500.00 |
| 1978 Mercedes | no value |
| 1975 Oldsmobile | no value |
| Personal property in residence at 2821 Burlingame | no value |
| Choice of 33 shares Super Creto or 30 shares Madison Square Garden | no value |
| TOTAL | $463,014.00 |

(Total includes property valued at $32,000 omitted by trial judge.)

To Robert Bohl:

| | |
|---|---:|
| Horses | $ 1,000.00 |
| Pleasure boats | 5,250.00 |
| Robert Bohl's M. W. Watson, Inc. profit sharing plan | 64,650.00 |
| Residence at 3648 Arrowhead Dr., Topeka, Ks. | 60,000.00 |
| Account balance at M. W. Watson, Inc. | 153,265.00 |
| Topeka Country Club membership | 7,500.00 |
| 101 shares 1st Natl. Bank | 3,636.00 |
| Life insurance cash value | 60,200.00 |
| Cash on hand | 10,100.00 |
| Stock of M. W. Watson, Inc. - 1866 shares at $1,027.58 per share | 1,917,464.00 |
| Personal property at 3628 Arrowhead Dr. | no value |
| Other automobiles | no value |
| Remainder of Super Creto or Madison Square Garden stock after Nancy's choice | no value |

| | |
|---|---:|
| Deductions from value of Robert Bohl's share loans taken out in substitute of salary check | (37,287.00) |
| Property tax due and unpaid | (1,730.00) |
| TOTAL | $2,244,048.00 |

The court, "in order to equalize the assets distributed between the parties," directed Robert Bohl to pay to Nancy Bohl $890,217.00 in accordance with a timetable agreed upon by counsel. The trial court further set apart to Nancy Bohl the total amount of her inheritance from her father, M. W. Watson, exclusive of the 100 shares of stock in the company which were lumped in with the shares of stock awarded to Robert. Finally, the trial court directed Robert Bohl to pay the "costs, witness fees, and expenses of this action," including Nancy's attorney fees.

In a supplemental memorandum issued January 7, 1982, the court adjusted the value of M. W. Watson, Inc. The court noted there were actually 2011 shares of stock outstanding in the company but that only 1866 of these were a part of the marital estate. Nevertheless, the court felt that for all intents and purposes ownership of the 1866 shares meant total control of the company. As such, Robert Bohl had been awarded the entire company. Accordingly, the trial court increased the value of the stock awarded to Robert Bohl from $1,917,464.00 to $2,066,463.00, the figure arrived at by the court for the total value of M. W. Watson, Inc. This increased the net amount of Robert Bohl's share to $2,393,047.00. It also increased Nancy Bohl's cash award to $964,716.50.

At a hearing the same day the trial court awarded 15.74 acres of unimproved real estate on North Buchanan Street in Topeka to Nancy Bohl. This property was left out of the original division as an oversight. The court intended this property to go to Mrs. Bohl and had included its $32,000 value in her share. The order merely carried out the previous award.

After a hearing on March 4, 1982, the trial court awarded Mrs. Bohl temporary support retroactively in the amount of $3,000 per month from June 1, 1981, to March 16, 1982.

Robert Bohl filed his notice of appeal from the trial court's decision April 15, 1982. In an order filed July 22, 1982, the trial court ordered Mr. Bohl to pay Mrs. Bohl $500.00 per month

temporary support from May 1, 1982, pending the outcome of this appeal.

Robert Bohl first complains the trial court abused its discretion in dividing the property by: (1) relying on evidence outside the record; (2) failing to consider the tax consequences of the division; and (3) including minority shares, owned by others not party to this suit, as a part of the marital estate subject to division. We will discuss these issues in order.

There is no disagreement on the rules governing division of property pursuant to divorce. The trial court is under a duty to divide the marital property in a "just and reasonable manner." K.S.A. 1981 Supp. 60-1610(d). In determining a just and reasonable division of the property the trial court should consider: (1) the ages of the parties; (2) the duration of the marriage; (3) the property owned by the parties; (4) the present and future earning capacities of the parties; (5) the time, source and manner of acquisition of property; (6) family ties and obligations; (7) the question of fault when determined; and (8) the allowance of alimony or the lack thereof. *Powell v. Powell,* 231 Kan. 456, 459, 648 P.2d 218 (1982); *Parish v. Parish,* 220 Kan. 131, 133-34, 551 P.2d 792 (1976).

"In a divorce action the district court is vested with broad discretion in adjusting property rights, and its exercise of that discretion will not be disturbed on appeal absent a clear showing of abuse." *Powell,* 231 Kan. at 459. See also *Downing v. Downing,* 218 Kan. 549, 542 P.2d 709 (1976). "[D]iscretion is abused only where no reasonable [person] would take the view adopted by the trial court. If reasonable [persons] could differ as to the propriety of the action taken by the trial court then it cannot be said that the trial court abused its discretion." *Powell,* 231 Kan. at 459. *Stayton v. Stayton,* 211 Kan. 560, 562, 506 P.2d 1172 (1973).

The primary question here is the valuation of the M. W. Watson Construction Company. In reaching a value the trial court considered evidence from various sources. The appellee, Nancy Bohl, presented evidence from Clarence Thiel of Wagner, Hohns, Inglis, Inc., a firm which makes appraisals of closely held corporations. Mr. Thiel offered a figure of $4,018,297.00 for the fair market value of M. W. Watson, Inc. Wilson McQuilkin, secretary-treasurer of M. W. Watson, Inc. since 1960, testified the book value of the company was $2,623,170.91 but the company was worth $1,158,477.59 more than book value making its total worth

$3,781,648.50. McQuilkin further testified he would take ninety per cent of book value for his eighty-five shares of stock. Annual audits by William R. Leonard, M. W. Watson's certified public accountant, were in evidence along with testimony from Robert Bohl himself. These two sources suggested a figure of $576.07 per share which, when taken times the 2011 outstanding shares of stock in the company, equals a total value of $1,158,476.77. In addition, Robert Bohl offered the testimony of Hugh Rice from Fails Management Institute, another firm dealing in appraisals of closely held corporations. He employed a "weighted average" method and arrived at a figure of $993,635.00 for the total fair market value of M. W. Watson, Inc.

The trial court found a sum between the figures offered by Mr. Rice and Mr. Thiel and reached a fair market value of $2,066,463.00, announcing the decision in a 70-page opinion. During the course of that opinion the court cited several reference sources which had not been discussed by the parties during trial. These included accounting textbooks and law review articles regarding valuation of closely held corporations. Appellant contends this was improper because it constituted considering matters outside the record in the case.

In order to better understand this issue let us examine what the trial judge did in reaching his decision.

First, the trial court justified its examination of outside authorities on the theory it is the court's obligation as factfinder to assure itself an expert's conclusions are competent, complete and objective.

The court then discussed the nature of the problem in this case, illustrating its use of outside authorities:

"In arriving at value it seems logical and competent to believe that the measure of corporate worth is a function of both its 'scrap' value and value as a 'going' business. As Dewing points out, and as logic dictates, purchase of 'scrap' is in essence based on the scrap itself's ability to be translated into earnings or profit to another whether purchasing it as an asset for another business or for profit on resale yet to another. Its economic value can never exceed its usability to produce a reasonable return or profit. To the owners of a business that is to go from 'going' to 'gone', and hence to a purchaser of such a business, the net scrap value of that business is a function of the cost of going out of business, such as making the physical assets salable, getting them sold, applying the proceeds to liquidate its liabilities, and then distributing this remaining value to its owners. Thus a component of value of a going business is at one extreme its cost of going out of business—its liquidation or scrap value, and at the other extreme—replacement

value as a whole of the assets necessary to reproduce the return or earnings demonstrated or thought realizable from their continued operation and use in the business in a forseeable future. See, Black and Champion [Accounting in Business Decisions (1961)] at pages 685-688. A. Dewing, [1 Financial Policy of Corporations (5th ed. 1953)] at pages 280-283, 305-306, 370-375. The risk factor, the determination of the probability of earnings at a specified and reasonable rate in the future, is represented by the capitalization rate, which in turn is a function of, and delicate judgment and application of the factors affecting this risk. Compare, A. Dewing, at pages 287-295, 388-391, Black and Champion, at pages 688-691."

The trial court rejected Mr. Thiel's figure of $4,018,297.00 as an incorrect analysis of the fair market value of the company. At the most, the court said, that estimate was "merely an expression of the very outside value of, and the dollars necessary to duplicate the on paper worth of, M. W. Watson, Inc."

The court then proceeded to go into a detailed analysis of the evidence presented by Hugh Rice, the expert witness for Robert Bohl. It discussed the "weighted average" method of valuation of a corporation stating the "weight/discount to net asset value in figuring the worth of the asset component of value is tied to liquidation value." The court went on to conclude "that weighting is sufficiently more judgmental than merely determining liquidated value of the assets."

The court explained that Mr. Rice's figure for the net asset value after weighting was $921,734.00 and his figure for the weighted earnings value was $320,314.00. Rice reduced the total of these two figures by a 20 per cent "marketability discount" leaving $993,635.00 as his estimate of the fair market value of M. W. Watson, Inc.

The trial court proceeded to consider Mr. Rice's application of the weighted formula expressing a fear it was "prone to accommodation for accommodation sake," but "if its underlying postulates are correct  .  .  .  then its application may be appropriate." The court went on to find Mr. Rice's method inappropriate in several areas, particularly with regard to corporate real estate which had no relationship to production of corporate income and had a high value totally independent of the construction corporation. The court then removed the real estate from the weighted average formula and calculated the balance of the corporate assets using Mr. Rice's formula. It came up with a corporate fair market value of $2,066,463.00, stating:

"As Mr. Rice testified he weighted the M. W. Watson, Inc., assets at 40 percent in order to compensate for its real estate and but for that, his *normal weighting was 80/20, earnings/assets.* Thus, to use the weighted average formula *properly,* one should apply the 80/20 weight to the company without the excess investment realty, and then *add* this total found to the dollar value of excess realty. The result then is proper and consistent with Arthur Dewing's approach, cited above, of going concern value and value of excess investment capital equal market worth." (Emphasis in original.)

It is clear the method utilized by the trial court in arriving at fair market value for M. W. Watson, Inc. was entirely proper. First, the court cited and relied on *Hotchkiss v. Fischer,* 139 Kan. 333, 31 P.2d 37 (1934), where it was recognized a broad range of facts should be considered in valuing a closely held corporation where an established market value is not readily available. See also *Equity Investors, Inc. v. Academy Ins. Group, Inc.,* 229 Kan. 456, 458, 625 P.2d 466 (1981). Second, the court's removal of the excess real estate from the property subject to the weighted average formula was reasonable and supported by the evidence. Finally, except with regard to the excess real estate, the trial court essentially followed Mr. Rice's weighted average formula.

Thus, appellant's contention that the trial court's consideration of the various accounting authorities cited amounted to an examination of evidence outside the record must fall. In cases tried to the court it is generally held the court has great leeway in deciding the facts. It is its duty to assess and weigh the testimony of the witnesses. *Crow v. City of Wichita,* 222 Kan. 322, 334, 566 P.2d 1 (1977); *Service Oil Co., Inc. v. White,* 218 Kan. 87, 542 P.2d 652 (1975). In doing so it may take into account any inferences legitimately to be drawn from the evidence before him. It cannot, however, go beyond the facts and base its findings on extraneous materials. *Meador v. Ranchmart State Bank,* 213 Kan. 372, 517 P.2d 123 (1973).

Here the trial court considered books and authorities on accounting not introduced at trial. The authorities from which the court sought guidance did not deal with a new theory. They were authorities on the methodology and formulas introduced by Mr. Rice. They could be compared to research material used in any legal controversy. The method used by the trial court in valuing the company was the same as that suggested by Mr. Rice except the excess real estate was removed. Further, the court did not

have to reach outside the evidence for authority to remove this excess real estate. The appellee urged the court to do so at trial.

Appellant next complains the trial court erred in failing to consider the tax consequences of its award. He argues: "Here, in order to partially satisfy the judgment, the company will have to be liquidated in whole or in part. . . . Defendant asserts it was error for the trial court to set an inflated value of the stock as a going concern when his judgment could not be satisfied without resort to liquidation."

Essentially appellant is arguing the trial court should have valued the stock of M. W. Watson, Inc., at its liquidation value rather than its "going concern" value because of tax consequences. With this argument we do not agree. Were it followed it would prevent a court from ever valuing property at more than cost because of tax consequences.

However, we recognize and acknowledge it would be unfair to require Mr. Bohl to liquidate his company and turn the proceeds over to Mrs. Bohl with nothing left for him. If this were the case it would defeat the trial court's goal of dividing the marital property equally.

We recognize the validity of appellant's argument as it pertains to the method of discharging the judgment to Nancy Bohl. As previously stated, the amount of the judgment is well within the evidence and will not be disturbed. However, alternative methods of payment of the judgment giving consideration to the tax consequences thereof deserve further consideration. We find the case should be remanded to the trial court for the limited purpose of receiving evidence and making findings on alternative methods of payment giving consideration to tax consequences, interest on and security for the unpaid balance.

Appellant next contends the trial court erred by including minority shares of M. W. Watson Inc. not owned by either party in the marital estate. His complaint is in regard to the trial court's supplemental opinion of January 7, 1982, where the court found the minority shares now owned by the parties had no real value and that the 1866 shares owned by the parties constituted the total value of the company.

Appellant's claim is somewhat misleading. An examination of the trial court's opinion reveals the court did not actually include the minority shares in the marital estate. The court concluded the 1866 shares of stock owned by the parties and properly included

within the marital estate constituted the total value of M. W. Watson, Inc. The 145 minority shares were without value since the company paid out most of its profit in bonuses at the end of each year leaving nothing from which dividends could be paid. We find no abuse of discretion.

Appellant next claims the trial court erred when it awarded temporary support to Mrs. Bohl retroactively to the trial of this action and prospectively pending appeal.

In its memorandum opinion the trial court stated in dividing the property it had considered the fact "defendant continued to forward his salary check to plaintiff during the interim from filing this divorce to this decision." Therefore, the court stated, it "elected to leave such sums where they remain." The court was mistaken. Mr. Bohl had ceased paying Mrs. Bohl any support June 1, 1981. As part of her Motion to Alter or Amend Judgment, Mrs. Bohl pointed out this mistake. After a hearing on the motion the court ordered Mr. Bohl to pay his ex-wife the sum of $3,000 per month retroactively from June 1, 1981, through the date the court's order regarding the post-trial motion was filed. This turned out to be March 16, 1982.

After Mr. Bohl filed his notice of appeal from the trial court's division of the property, Mrs. Bohl applied to the Kansas Court of Appeals for temporary support pending appeal. This issue was remanded to the trial court which ordered Mr. Bohl to pay $500.00 per month temporary support from May 1, 1982, pending the final outcome of this appeal.

The $3,000.00 per month award for temporary support also falls within the sound discretion of the trial court. We find no abuse of discretion.

The order awarding $500.00 per month temporary support pending this appeal is not before this court since no appeal was taken from it.

Finally, appellant argues it was error to require him to pay court costs and attorney fees for both parties. In view of the trial court's stated goal to make an equal division of property, we find the parties should share the court and discovery costs equally and each party should pay his or her witnesses and attorneys.

The judgment of the trial court is modified consistent with this opinion and the case is remanded to the trial court with directions to conduct a hearing on alternative methods of paying the judg-

ment to Nancy Bohl in the amount of $964,716.50 with special attention to tax consequences, interest on and security for the unpaid balance. This court retains jurisdiction of this case for the purpose of reviewing the findings of the trial court. The judgment of the trial court is affirmed as modified.

PRAGER and MILLER, JJ., not participating.