NOT DESIGNATED FOR PUBLICATION

Nos. 123,483
123,696

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of

TIFFANY VIOLETTE FARHA,
*Appellee*,

and

BROCK CHRISTOPHER OAKS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; MONIQUE CENTENO, judge. Opinion filed April 8, 2022. Affirmed.

*Andrew Foulston* and *Stacy L. Ortega*, of McDonald Tinker PA, of Wichita, for appellant.

*Jeffery L. Carmichael*, of Morris, Laing, Evans, Brock & Kennedy, Chartered, of Wichita, and *T. Lynn Ward*, of Ward Potter, LLC, of Wichita, for appellee.

Before GARDNER, P.J., HILL and ISHERWOOD, JJ.

PER CURIAM: In these combined cases, Brock Oaks appeals the division of marital property in his divorce from Tiffany Farha. He claims the court inequitably divided their business interests and attributed incorrect values to their property in doing so. When we review such questions, we examine the record to determine whether the division of assets is equitable, not necessarily equal, and if the values attributed to the divided assets follow the evidence presented to the court. Our review of this record reveals that the court

1

divided the business interests of the parties equitably and assessed values supported by evidence. We see no abuse of discretion here and affirm the district court.

*A long-term marriage ends in divorce.*

After 23 years, Farha and Oaks divorced in November 2019. They have two children together. During those years they had accumulated several business interests which the court divided. That division and the values assessed by the court are the only subjects of this appeal.

The parties had a prenuptial agreement. It generally provided that their earnings during their marriage would be marital property. They would keep their separate property acquired before the marriage and property received as individual gifts. They waived any claim for maintenance.

During the marriage, Farha worked for her own company, Tiffany Farha Design. Oaks obtained a master's degree in real estate development from Columbia University. Farha's family paid all the parties' expenses while Oaks pursued his degree. After Oaks obtained his degree, he was self-employed. He looked for projects and properties to purchase and then redevelop. When he sold properties, he would then reinvest in a different project. Oaks and some of Farha's family members were partners on several of these projects.

Farha's income exceeded Oaks' earnings. Her income paid for most of the household expenses during the marriage. Many times, Farha also funded Oaks' business deals. For example, she used her personal trust to guarantee the debt on one of the business ventures for over $3 million.

Oaks' compliance with the court's orders has been problematic. For example, after Farha filed the divorce petition and the court had issued temporary orders, Oaks bought a Porsche automobile in violation of the court's orders and debited Farha's bank account to pay for it. He was found in contempt.

Before trial, Oaks employed several different attorneys. The trial date was set more than a year after the divorce petition was filed. Even so, a week before the trial date, Oaks moved to continue the trial and reopen discovery so that he could, among other things, retain appraisers and other experts. Over Farha's objection, the court continued the trial date and re-opened discovery to allow Oaks to identify a rebuttal expert. But Oaks did not call any expert witnesses to testify at trial on any of the matters on appeal.

Oaks' failure to comply with the orders of the court is central to one of the issues in this appeal. During discovery, Farha served Oaks with requests for admissions relating to certain financial statements Oaks provided to banks to obtain loans. Farha sought admissions that

- the personal financial statements were true and correct;
- the personal financial statements accurately reflected the financial condition of the parties;
- Oaks signed the personal financial statement verifications attesting to the truth and accuracy of the financial information; and
- the financial statements were submitted to banks with the intent that those banks rely on the information contained there.

Despite being given an extension of time to answer, Oaks never responded to this discovery request. The court finally ordered the requests for admission Nos. 1-14 served June 14, 2019, be "deemed admitted."

Farha also served Oaks with interrogatories seeking information related to the value of the parties' various business ventures. Oaks did not produce such information.

*Their divorce comes to trial.*

During trial, Farha used Oaks' financial statements as her evidence of the values of the parties' business interests. Oaks testified that he had provided the numbers on the financial statements "based on appraisals from certified appraisers." The banks required Oaks to submit periodic personal financial statements in relation to loans. One financial statement was dated January 2, 2018, provided to CrossFirst Bank. Another was prepared for Simmons Bank dated April 15, 2019. Oaks also testified he submitted to CrossFirst a personal financial statement dated November 5, 2018, that was true and correct with the intent the bank would rely on such information. If the financial statements contained different values for the same entity, Farha testified that she "always chose the one that was beneficial to [Oaks]" and "always took the lower number" when assigning value to the businesses. The court ordered the parties to use the date of December 31, 2018, when assigning value to their marital assets.

Pertinent to the division of their assets is the fact that Farha and Oaks both testified Oaks had a poor relationship with Farha's family. Oaks sent threatening emails and text messages to Farha's brother. This is significant because members of Farha's family had a financial interest in five of the parties' business interests:  Elevations, Linear, Wilhelmina, Far Oaks, and Old Town Partners. Farha asked that those interests be allocated to her to avoid future disputes between Oaks and her family. She testified it would not be feasible for Oaks to continue to be involved in those businesses because of his hostility toward her brother.

Farha called an expert that testified to the fair market value of Tiffany Farha Design. The expert testified the value was negative $90,474.

4

For his part, Oaks testified about the nature of the parties' business interests and their estimated value based on his own knowledge. He testified Clear Data Networks was a company that hosted electronic medical records. He was a founder of Clear Data and the former chief strategy officer, working daily at the company at first. Several of the parties' interests were real estate investments near Wichita State University:  Far Oaks, Elevations, Linear Properties, Wilhelmina Rentals, Pacific Avenue Rentals, and Grandview Apartments. Finn Lofts was also a rental building, but not near campus. DBM Investments was a hotel project in Minnesota. Amendment Two was a body armor company. Honeycrisp was an entity used to invest in a robotics company.

Oaks agreed with Farha's valuation of six of the business interests:  Far Oaks, Finn Lofts, DBM, Amendment Two, Honeycrisp, and Tiffany Farha Design. The court adopted those values as part of its order.

But Oaks disagreed on the value of the other business interests. He testified that based on their fair market value:

- Grandview should be valued at $173,250;
- Pacific Avenue should be valued at $650,000;
- Elevations should be valued at $2,536,927;
- Linear should be valued at $1,084,693; and
- Wilhelmina should be valued at $307,069.

He did not have any documentation to support such values. He did not know the value of Clear Data and he offered no opinion on that interest. Instead, he proposed their ownership interest of Clear Data should be split evenly.

The court did what it had to do. In its final judgment issued May 20, 2020, the court divided the properties and determined their values. It awarded Tiffany Farha Design to Farha at a value of negative $90,474 based on expert testimony. The court awarded to

5

Farha the business interests that involved her family based on the value found in the financial statements:

- Far Oaks at a value of $1,485,762;
- Finn Lofts/Old Town Partners at a value of $299,818;
- Elevations at a value of $392,347;
- Linear at a value of $308,941; and
- Wilhelmina at a value of $153,023.

The court awarded to Oaks the remaining business interests based on the value found in the financial statements or as agreed to by the parties:

- DBM at a value of $87,819;
- Amendment Two at a value of $0;
- Clear Data at a value of $2.4 million;
- Pacific Avenue at a value of $841,389;
- Grandview at a value of $309,000; and
- Honeycrisp at a value of $5,000.

The court totaled the assets awarded to Farha and Oaks and found a difference of $328,796 in favor of Oaks. Thus, the court ordered Oaks to make an equalizing payment to Farha in the amount of $164,398.

On June 16, 2020, Oaks filed his first notice of appeal. The next day, he filed a motion for new trial, to open the judgment to allow additional testimony, or to alter/amend the judgment. In August 2020, the court heard Oaks' motion. Oaks' counsel argued "there was a wealth of information that he was not allowed to collect and/or present at trial" by the time she entered the case. The court took the matter under advisement.

In November 2020, the trial court dismissed Oaks' appeal for failure to docket the appeal in compliance with Supreme Court Rules. Oaks then filed with our court a motion to reinstate his appeal and a docketing statement. This court ordered the appeal reinstated under case number 123,483, noting a concern about the finality of the judgment being appealed.

After that, the district court denied Oaks' posttrial motion under K.S.A. 2020 Supp. 60-259 and K.S.A. 2020 Supp. 60-260 because Oaks "was given plenty of time to prepare for trial." Oaks filed a second notice of appeal. A second appeal was docketed with this court under case number 123,696. This court consolidated the two appeals.

Oaks raises three issues on appeal:
- Did the trial court abuse its discretion in dividing the parties' business interests and use an arbitrary and inconsistent method of valuation?
- Did the trial court lose jurisdiction to deny Oaks' posttrial motion?
- Did the trial court abuse its discretion in denying Oaks' posttrial motion?

*Jurisdiction to decide posttrial motions*

We take up this issue first, as it affects what we have to decide. Oaks, in a curious argument, contends that the district had lost jurisdiction to deny his posttrial motion for a new trial or in the alternative, a motion to alter or amend the judgment. We say curious because if the court had no jurisdiction to deny his motion, it follows that it had no jurisdiction to *grant* his motion as well. That would mean that we would dismiss from this appeal any of Oaks' claims seeking posttrial relief. So, we would have to confine our review only to the district court's initial division of the marital assets and not examine the court's ruling denying relief.

We do not think that is what Oaks wants from this appeal because he strenuously argues the district court abused its discretion when it denied him any posttrial relief.

But appellate courts are always concerned about jurisdiction. We look first at the details of the case history that we have found from our review of the record. Here is the time line we have constructed:

| | |
|---|---|
| May 20, 2020: | Trial court filed journal entry of final judgment. |
| June 16, 2020: | Oaks filed first notice of appeal. |
| June 17, 2020: | Oaks filed motion for new trial, to open the judgment to allow additional testimony, or to alter/amend the judgment. |
| August 19, 2020: | Hearing held on Oaks' motion. |
| November 24, 2020: | Trial court dismissed Oaks' appeal for failure to docket. |
| December 15, 2020: | Oaks filed with this court a motion to reinstate his appeal and a docketing statement. |
| December 29, 2020: | This court ordered the appeal be reinstated under case number 123,483. |
| January 8, 2021: | Trial court denied Oaks' motion. |
| February 5, 2021: | Oaks filed a second notice of appeal. |
| March 1, 2021: | Second appeal docketed under case number 123,696. |
| March 12, 2021: | This court consolidated the two appeals. |

A review of some law is helpful at this point. It is fundamental rule of jurisdictional law that a district court loses jurisdiction over a case upon the filing of a motion with the appellate court to docket the appeal. *In re Care & Treatment of Emerson*, 306 Kan. 30, 35, 392 P.3d 82 (2017). So, did the district court lose jurisdiction to rule on a pending posttrial motion after the appeal was docketed on December 29, 2020?

8

Considering the circumstances of this case, we are persuaded that Oaks' first notice of appeal was premature. After reviewing the Supreme Court Rules and the caselaw interpreting those rules, we hold the district court here did not lose jurisdiction to decide the posttrial motion for relief. Oaks timely filed his notice of appeal a day before he filed his posttrial motion. The court did not rule on that motion until later. The court's judgment was not final because it could have granted Oaks' posttrial motion.

Basically, a notice of appeal filed after the district court announces a judgment to be entered, but before the actual entry of judgment—is a valid, premature notice of appeal under Supreme Court Rule 2.03(a) (2022 Kan. S. Ct. R. at 15) and becomes effective upon entry of final judgment. See *State v. Hall*, 298 Kan. 978, 988, 319 P.3d 506 (2014).

Supreme Court Rule 2.03(b) also provides that a party seeking to challenge the court's holding on posttrial motions, such as that filed here, must file a timely notice of appeal from the ruling on those motions. Oaks has done that as well.

By ruling this way in this divorce—an equitable action—we can then review all the arguments made by the parties, including those centered on the claims of abuse of discretion, in the district court denying posttrial relief.

We now take up the issues on the merits of the appeal.

*Did the trial court use an arbitrary method of evaluation and thus abuse its discretion?*

Oaks argues the trial court assigned unreasonably high values to the assets it granted to Farha and unreasonably low values to the assets awarded to him. He attacks the trial court's division of the assets in five areas. Oaks contends the court was arbitrary and unreasonable because it:

9

- failed to simply award each party half of the shares of each asset when the court had limited evidence regarding each asset's value;

- failed to consider the time, place, and manner of the acquisition of the assets—that Oaks was directly responsible for founding and building the entities;

- failed to state a valid basis for its valuation of the assets despite the difficulty of valuing closely held corporations;

- valued the assets without sufficient evidence to do so and despite conflicting values on the financial statements and Oaks' testimony; and

- ordered an equalization payment to Farha driven by an unreasonable valuation and division of the assets.

*The law of property division that guides us is well settled:  it is a matter of discretion.*

A trial court's division of property in a divorce action is governed by K.S.A. 2020 Supp. 23-2801 et seq. A trial court has broad discretion when adjusting the property rights of the parties involved in a divorce action. As a result, the trial court's property division is reviewed for abuse of discretion. *In re Marriage of Wherrell*, 274 Kan. 984, 986, 58 P.3d 734 (2002); *In re Marriage of Vandenberg*, 43 Kan. App. 2d 697, 715, 229 P.3d 1187 (2010). A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *Biglow v. Eidenberg*, 308 Kan. 873, 893, 424 P.3d 515 (2018). The party asserting the district court abused its discretion bears the burden of showing such abuse of discretion. *Gannon v. State*, 305 Kan. 850, 868, 390 P.3d 461 (2017). This means that Oaks has the burden to prove this division was an abuse of the district court's discretion.

The trial court has many options available. It can divide the property either:
(1)     in kind;
(2)     by awarding the property or part of the property to one spouse and requiring the other to pay a just and proper sum; or

(3)     by ordering a sale of the property and dividing the proceeds of the sale. K.S.A. 2020 Supp. 23-2802(a).

In dividing the property, the court shall consider:

(1)     the age of the parties;

(2)     the duration of the marriage;

(3)     the property owned by the parties;

(4)     the parties' present and future earning capacities;

(5)     the time, source, and manner of the acquisition of the property;

(6)     family ties and obligations;

(7)     the allowance of maintenance or lack thereof;

(8)     dissipation of assets;

(9)     the tax consequences of the division, and;

(10)    such other factors as necessary to make a just and reasonable division. K.S.A. 2020 Supp. 23-2802(c).

A property division need only be equitable, not equal. *In re Marriage of Perales*, 58 Kan. App. 2d 26, 30, 463 P.3d 427 (2020), *rev. denied* 314 Kan. 855.

*The financial statements accompanied by Oaks' admissions and Oaks' testimony provided substantial competent evidence for the trial court to reasonably value the assets.*

A theme throughout Oaks' brief is that the financial statements did not provide substantial competent evidence for the trial court to reasonably value the parties' business interests. He cites the Kansas Family Law and Practice Treatise section on property division.

The treatise explains that the trial court "cannot make a just division of property if values are not known," but the trial court "has discretion to determine value based on the

11

evidence presented." 2 Elrod, Kansas Law and Practice: Kansas Family Law § 10:7 (2022 ed). An expert is unnecessary in all cases and, in many cases, may not be cost effective. The parties are competent to state their opinion on the value of their property. There are many methods to value property including fair market and book value. The determination of value is a question of fact for the trial court. 2 Elrod, Kansas Law and Practice: Kansas Family Law § 10:7 (2022 ed.).

The treatise also explains that valuing closely held corporations can be difficult. "Neither book value, assessed value nor dividend income may reflect actual value in a closely held business. The expert must evaluate and review the business." 2 Elrod, Kansas Law and Practice: Kansas Family Law § 10:11 (2022 ed.). But there is not always enough value to warrant the expense of a professional evaluation. 2 Elrod, Kansas Law and Practice: Kansas Family Law § 10:11 (2022 ed.). This excellent work explains the difficulties that arise when a court must assess values to closely held businesses.

Caselaw suggests that more sources of information are better when valuing a business. In *Bohl v. Bohl*, 232 Kan. 557, 564, 657 P.2d 1106 (1983), the court recognized that "a broad range of facts should be considered in valuing a closely held corporation where an established market value is not readily available."

The statute, K.S.A. 2020 Supp. 23-2802, governs the valuation and division of property in divorce actions. It does not specify a method a trial court should use to determine the value of property. Thus, the court has broad discretion. See *In re Marriage of Wherrell*, 274 Kan. at 986-87; *In re Marriage of Robinson*, No. 123,219, 2021 WL 5266569, at * 3, (Kan. App. 2021) (unpublished opinion).

As always though, a trial court's factual findings must be supported by substantial competent evidence. Thus, "[t]he values assigned to marital property must be within the range of evidence before the court." *In re Marriage of Schwien*, 17 Kan. App. 2d 498,

12

509, 839 P.2d 541 (1992); *In re Marriage of Beachner*, No. 109,331, 2014 WL 6676038, at *10 (Kan. App. 2014) (unpublished opinion). If there is substantial evidence to support the trial court's findings, it does not matter that there may have been contrary evidence. Appellate courts do not weigh conflicting evidence, pass on credibility of witnesses, or redetermine questions of fact. *Geer v. Eby*, 309 Kan. 182, 191, 432 P.3d 1001 (2019); *In re Marriage of Beachner*, 2014 WL 6676038, at *12.

A trial court's business valuation may be upheld even though the trial court rejects both parties' expert opinions and settles on a value between the two proposed values. *In re Marriage of Sinks*, No. 110,316, 2014 WL 4627495, at *8 (Kan. App. 2014) (unpublished opinion).

Here, the disputed business interests were: Clear Data, Grandview, Pacific Avenue, Elevations, Linear, and Wilhelmina. The trial court explained it valued these business interests based on the financial statements Oaks provided to the banks. Before trial, Oaks admitted (by court order because he failed to respond to discovery) that certain financial statements were true, correct, accurate, and submitted to the banks with the intent that the banks would rely on such information. At trial, Oaks acknowledged his admissions and testified that he had provided the numbers on the financial statements "based on appraisals from certified appraisers." He testified some were book value, some were amounts invested, and some were fair market value. He also testified he arrived at those values based on "an appraisal, money that I had put into it, or equity, whatever my ownership was less the debt at that time. . . . Checked the rents and so forth, checked the financials that were available." He also looked at other factors such as development projects underway or in the planning stages—the end goal use of the property.

At trial, Oaks also testified to his believed fair market value of the disputed business interests, but he did not explain how he arrived at those numbers.

13

The record reflects that the trial court had a range of values for the disputed business interests on the different financial statements, which were deemed accurate as of a particular date. For all but two of the disputed business interests, the court picked the value from the financial statement that had been completed closest to the valuation date—December 31, 2018. We next examine the court's opinion about the various interests.

Grandview, Elevations, Linear, and Wilhelmina: The court valued four of the disputed interests based on the November 2018 financial statement. The court valued Grandview at $309,000. On the financial statement, Oaks explained the value followed a certified appraisal. The court valued Elevations at $392,347 and Linear at $308,941. On the financial statement, Oaks explained the value followed appraisals. The court valued Wilhelmina at $153,023. On the financial statement, Oaks explained the value followed an appraisal. The financial statement was dated less than two months before the court-ordered valuation date. The use of such values was reasonable under these facts.

Pacific Avenue: The court valued Pacific Avenue at $841,389 based on the April 2019 financial statement. On that statement, Oaks explained "Final accounting in work adjusted for Merger" and that the value reflected book, not market value. The other two financial statements listed two separate entries for Pacific Avenue. It was not unreasonable for the trial court to use the most recent financial statement in this case. The court can consider changes in value of the assets after the valuation date. K.S.A. 2020 Supp. 23-2802(b).

Clear Data: The court valued Clear Data at $2.4 million based on the January 2018 financial statement. On that statement, Oaks explained the value represented total capital raised and valuation based on income. He listed Darrin Brannen, CEO, as the contact. The other two financial statements relied on at trial merely listed the value as "TBD." Oaks testified at trial he did not know the value of Clear Data. He testified it could be

14

worth nothing or it could be worth a lot. But he also testified he had "3.2 million shares right now" of the company, which was close to what the January 2018 financial statement reported. Thus, the trial court had one value for the Clear Data interest supported by the evidence, which the court used.

This trial was no battle of the experts making complicated valuations of closely held business interests. Neither party called an expert to testify about the disputed matters. (Farha did present the testimony of an expert on the negative value of her design company but that was not disputed by the parties.)

We must ask then, did the trial court have substantial competent evidence to value the business interests without such expert testimony? Under these circumstances, the answer is yes. Oaks' pretrial admissions made the expense of an expert unnecessary. It was unnecessary for Farha to pay for an expert valuation for each of the businesses when Oaks had already admitted to the value of those businesses. Oaks explained at trial how he arrived at the numbers provided on the financial statements using several factors.

The values assigned by the trial court were within the range of evidence before the court. While Oaks explained how he arrived at the numbers on the financial statements, he did not explain how he arrived at the alternate numbers he proposed at trial. The trial court noted the importance of the documentation supporting Farha's proposed numbers and that Oaks had supplied those values on the financial statements. This court does not reweigh evidence. *Geer*, 309 Kan. at 191. The trial court was within its wide discretion to arrive at its result.

*The trial court's decision to divide the assets rather than split each evenly was not arbitrary or unreasonable.*

A reasonable person could agree with the trial court's decision to divide the assets the way it did rather than split each evenly. Several steps taken by the court show why this is so.

The trial court found Oaks had a "horrible relationship" with Farha's family evidenced by text messages Oaks sent to Farha's brother that persisted during the trial. "Because Respondent has such hatred for Petitioner's family, the parties cannot successfully be divorced if Respondent continues in business with Petitioner's family." In dividing the business interests, the court noted that the interests awarded to Farha were the Farha family businesses. The remaining business interests were awarded to Oaks. In awarding Clear Data to Oaks, the court noted that Oaks had at one point held a pivotal role in that company.

The trial court's conclusion was supported by the evidence at trial. There was extensive testimony about the hostility Oaks had for Farha's brother. Oaks had sent threatening text messages and emails. Oaks had berated Farha's brother and threatened litigation. Farha testified it would not be feasible for Oaks to remain involved in those businesses. She stated that she needed a financial separation from Oaks. There is no hint in this record that Oaks and the Farha family would begin to cooperate just because the divorce was final. It was reasonable for the court to award certain business interests to Farha based on the involvement of her family in those businesses. It was also reasonable for the court to award Clear Data to Oaks based on his role as a founder and the sweat equity he had put into it. The split made a nearly equal distribution of the assets. While it is true that another judge may have split the assets differently, that possibility does not mean that this division was an abuse of discretion.

*The trial court considered the time, place, and manner of the acquisition of the assets.*

We offer some significant legal points before we comment on this issue. There is no requirement that the trial court detail in writing how it relied on the statutory factors, but remand may be appropriate when it is unclear whether the trial court even applied the relevant factors and there is a lack of sufficient findings and conclusions by the trial court. *In re Marriage of Sinks*, 2014 WL 4627495, at *9. It is an abuse of discretion for the trial court to disregard the K.S.A. 2020 Supp. 23-2802(c) factors. See *In re Marriage of Ginavan*, No. 100,014, 2009 WL 1393758, at *4 (Kan. App. 2009) (unpublished opinion).

But that did not happen in this case. The trial court explicitly referred to the K.S.A. 2020 Supp. 23-2802(c) factors as well as the following circumstances as the basis for its decision:

- Tiffany Farha Design supported the family and Oaks' businesses during the marriage;
- Farha paid for the living expenses for herself, the children, and Oaks after he left the marital residence;
- Oaks violated the court's temporary orders by purchasing the Porsche automobile;
- Oaks invested work equity into the business interests; and
- Oaks had a "horrible relationship" with Farha's family.

To us, Oaks focuses only on his own time invested in the businesses. The trial court was not so shortsighted. Not only did the trial court consider the work Oaks did in founding and developing the businesses, but the court also considered the financial support that Farha provided to make Oaks' business ventures possible. The court explained that Farha had used her own investment funds, family trust, and income from

17

her design business to support Oaks' businesses. The court, when it considered all of these facts, followed the evidence presented at trial.

*The trial court stated a valid basis for its valuation.*

The statute, K.S.A. 2020 Supp. 23-2802(c), does not specify a method of valuation the trial court must use when dividing the marital property. The financial statements, which the trial court relied on, stated a basis for the valuation. Oaks admitted the financial statements were accurate. He testified at trial concerning how he arrived at those values. That the values for the different properties may have been based on a different method of valuation is not a clear abuse of discretion. It was Oaks' choice not to call an expert to testify at trial. The trial court arrived at a valuation based on the evidence presented. Because the court's decision was based on the range of evidence presented at trial, the court did not abuse its discretion.

*We cannot reweigh conflicting evidence.*

It was not an abuse of discretion for the trial court to value the assets despite conflicting evidence on the various financial statements and from Oaks' testimony. When there is conflicting evidence, it is a question of fact for the trial court to determine property values. As stated above, "[t]he values assigned to marital property must be within the range of evidence before the court." *In re Marriage of Schwien*, 17 Kan. App. 2d at 509. If there is substantial evidence to support the trial court's findings, it does not matter that there may have been contrary evidence. This court cannot reweigh the evidence. *Geer*, 309 Kan. at 191. We decline Oaks' invitation to reweigh the evidence in this case.

18

*The trial court's decision to award an equalizing payment was not unreasonable.*

The trial court did not abuse its discretion by ordering Oaks to pay Farha an equalizing payment. In fact, one case has held that it is an abuse of discretion to simply apply a 50/50 standard without regard to the K.S.A. 2020 Supp. 23-2802(c) factors. *In re Marriage of Ginavan*, 2009 WL 1393758, at *4. The circumstances of a case may show that a 50/50 division is, in fact not equitable.

The trial court properly considered all of the K.S.A. 2020 Supp. 23-2802(c) factors. It found an equalizing payment would be just, equitable, and fair. Oaks stated at trial he wanted an equal split of the parties' assets. This means he invited the use of an equalizing payment. When a party has invited error, the error cannot be complained of on appeal. *Water Dist. No. 1 of Johnson Co. v. Prairie Center Dev.*, 304 Kan. 603, 618, 375 P.3d 304 (2016).

To sum up, the trial court took a legally proper and reasonable approach to the division and evaluation of these business interests. It used the evidence presented by the parties to make its valuation and division decisions. Given our rules and the standard of review, we find no grounds to grant Oaks any relief on this issue.

*The court's ruling on Oaks' posttrial motion is not an abuse of discretion.*

Oaks contends that because he "did not receive the information regarding his interest in Clear Data until well after trial . . . [he] could not have produced the information at the time of trial." He argues the trial court's decision did not address whether he could have provided the information at trial with the use of reasonable diligence. Farha argues the record is devoid of any efforts made by Oaks to obtain the information prior to trial.

19

Oaks filed a motion for new trial, to open the judgment to allow additional testimony, or to alter/amend the judgment under K.S.A. 2020 Supp. 60-259(a)(2) and K.S.A. 2020 Supp. 60-260(b). His motion was denied.

A trial court has discretion to grant or deny a motion for new trial under K.S.A. 2020 Supp. 60-259(a), and an appellate court will not disturb the district court's ruling on a motion for new trial unless the district court abused its discretion. *City of Mission Hills v. Sexton*, 284 Kan. 414, 421, 160 P.3d 812 (2007). Appellate courts also review the denial of a motion for relief from judgment filed under K.S.A. 2020 Supp. 60-260(b) under an abuse of discretion standard. *In re Marriage of Leedy*, 279 Kan. 311, 314, 109 P.3d 1130 (2005).

Considering the nature of Oaks' argument on this point, a trial court may grant a new trial based on "newly discovered evidence that is material for the moving party which it could not, with reasonable diligence, have discovered and produced at trial." K.S.A. 2020 Supp. 60-259(a)(1)(E).

At the motion hearing, Oaks' counsel argued "there was a wealth of information that he was not allowed to collect and/or present at trial" by the time she entered the case (days before the initial trial date). She argued, "Since the time of trial, my client has diligently worked to be able to determine what the value of that was because he had tried to do that beforehand and was unable to do so." She referenced an affidavit from the president of Clear Data, Darrin Brannen, stating Oaks had only 13,333 shares, which she argued would be worth about $133.33. When the court asked why this was unavailable at trial, she stated,

> "It took much more investigation to be able to contact him and get him to provide an
> affidavit, since we were not able to issue subpoenas or take depositions or anything

20

else . . . At the point that I entered into this we were not allowed to add any additional witnesses or do any additional discovery."

She made vague reference to "efforts" Oaks took to find out the value prior to trial.

Oaks' counsel also referred to another affidavit from Mark Farha, who is Farha's cousin, concerning Elevations, Linear, and Wilhelmina. Pending zoning changes made those properties more valuable. Again, she stated Oaks did not have that information at trial because he could not get it without taking depositions or issuing subpoenas, "which by the time that I was involved in this case, was not allowed by the Court."

Farha argued that Oaks could have contacted the people who supplied these affidavits before trial. Farha had requested such information from Oaks before trial, but he did not produce it. Farha also argued Oaks had an expert designated to testify to the value of those investments but chose not to call him to testify at trial.

The trial court denied Oaks' motion because Oaks "was given plenty of time to prepare for trial." The court cited reasonable diligence as the standard for new evidence. The court explained, "Respondent wants to present new evidence. However, the court granted Respondent's request/s for continuance in order to obtain expert witnesses. It's inappropriate for Respondent to present additional evidence when he was given an opportunity to do so at trial and failed to do so."

That Oaks *did not* receive certain information before trial does not mean that Oaks *could not have* discovered the information using reasonable diligence. While the trial court may not have used the term "reasonable diligence" in its analysis, it is clear to us that is what the court was talking about. It was clear at the motion hearing what the issue was. The court interrupted Oaks' counsel and asked her to address why the "new evidence" was unavailable at trial. The court said Oaks had the "opportunity" to present

21

more evidence at trial. The court found Oaks could have presented his evidence at trial but failed to do so.

The court's conclusion is supported by the record—such as the affidavits mentioned above. Oaks could have contacted Brannen or Mark Farha, yet there is no indication that Oaks tried to subpoena information or depose them while discovery was open. Oaks' counsel merely referenced generic "efforts" Oaks made before trial to obtain the information.

Oaks waited until one week before the trial date to retain his trial counsel. After that, the court gave him more discovery time to identify a rebuttal expert. But Oaks called no such expert to testify at trial on the disputed matters. There is no indication in the record that he was unable to prepare an expert using reasonable diligence.

We find no abuse of discretion in the trial court's denial of Oaks' posttrial motion.

*Conclusion*

If there is a lesson to be learned here it is this:  our rules on pretrial discovery do not favor litigants who disobey them. Simply put, a trial court must hear the facts of a case to make its judgments. Thus, our pretrial discovery rules promote the efficient and thorough disclosure of the facts from and to all parties as well as to the court.

But a case will not linger forever. The rules allow a party to obtain factual admissions from an opposing party. It is a legal and reasonable technique that promotes the efficient litigation of a case. It is a way to reveal the facts of a case to the court so the court can do its work. A litigant, however, should never overlook the significance of such admissions.

Oaks claims there is important information that the court should consider in evaluating these business interests. This may be true. He had a year before trial to mine for this information and retain whatever expert help he needed to present his best case to the court. The trial court even continued the trial to afford Oaks that opportunity to prepare his case. For whatever reason he had, Oaks failed to seize the opportunity and diligently prepare his trial evidence.

Under our rules, it was reasonable for the trial court to use Oaks' own admissions as the value of these business interests. After all, admissions are admissions.

Affirmed.